T.C. Memo. 2005-141


UNITED STATES TAX COURT


TERRY I. AND LOUISE MAJOR, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20846-03.                Filed June 16, 2005.


        Ps failed to file a Federal income tax return for
the 2001 year.  R subsequently determined a deficiency
and additions to tax, which Ps then contested primarily
on the basis of R's failure to carry his burden of
proof and the inapplicability of the filing
requirement.

        Held:  Ps are liable for the deficiency determined
by R and for additions to tax under sec. 6651(a)(1),
I.R.C.


Terry I. and Louise Major, pro sese.

Kelly Davidson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined a Federal income tax deficiency for Terry Major's 2001 taxable year in the amount of $5,613 and an addition to tax pursuant to section 6651(a)(1) in the amount of $1,403.25 and for Louise Major's 2001 taxable year a Federal income tax deficiency in the amount of $1,016 and an addition to tax pursuant to section 6651(a)(1) in the amount of $254.[1]  The issues for decision are:

(1) Whether petitioner Terry Major (Terry) is liable for a deficiency in the amount of $5,613 for the 2001 taxable year;

(2) whether petitioner Louise Major (Louise) is liable for a deficiency in the amount of $1,016 for the 2001 taxable year;

(3) whether petitioners are liable for additions to tax under section 6651(a)(1); and

(4) whether the Court should impose a penalty, sua sponte, under section 6673.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2] The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time this petition was filed, petitioners resided in Glendale, Arizona.

On August 29, 2003, respondent issued to petitioner Terry a notice of deficiency determining that in 2001 Terry received $18,407 in miscellaneous income from The Dollarhide Financial Group LLC (Dollarhide) and $8,182 in miscellaneous income from Lincoln Financial & Insurance Services of Nebraska or Lincoln Financial Group (Lincoln) for computer services rendered under the d.b.a. name, Major Computer Services. These amounts were reported to respondent on Forms 1099-MISC, Miscellaneous Income. Respondent also determined that in 2001 Terry received $15 from National Financial Services LLC, as reported to respondent on Form 1099-DIV, Dividends and Distributions, and $1 from Robert

---

[2] Petitioners objected to many of the paragraphs in the Stipulation of Facts on Fifth Amendment grounds. The Court informed petitioners that they were not permitted to use the Fifth Amendment privilege as both a sword and a shield. See United States v. Rylander, 460 U.S. 752, 758 (1983). Furthermore, the Court warned petitioners that both the Supreme Court and the Courts of Appeals have held that a person does not have a right to claim the Fifth Amendment privilege to avoid filing a Federal income tax return or to refuse signing a Federal income tax return under penalties of perjury. See United States v. Sullivan, 274 U.S. 259, 263 (1927).

McCauley, Jr. as reported to respondent on a Form 1041, Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, etc.[3]

On August 29, 2003, respondent also issued to petitioner Louise a notice of deficiency determining that in 2001 Louise received $18,037 in demutualization compensation[4] from Principal Financial Group, Inc., Mellon Investor Services (Mellon) as reported to respondent on Form 1099-B, Proceeds from Broker and Barter Exchange Transactions 2001, and $343 in interest income from Principal Life Insurance Company (Principal) as reported to respondent on Form 1099-INT, Interest Income, and $12 in interest income from Desert Schools Federal Credit Union as reported on Form 1099-INT.[5] None of the payors withheld any Federal income tax from either Terry's or Louise's reported income. Petitioners

---

[3] Respondent did not address these amounts on brief or at trial. As addressed, infra p. 16, respondent's "presumption of correctness" with respect to the determination is appropriate where respondent has furnished evidence linking the taxpayer to the "tax generating activity." Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559. Respondent did not provide any third party payor information or any other evidence linking these amounts to petitioner. Thus, the Court deems that respondent has conceded these amounts.

[4] See infra p. 20.

[5] With respect to the amount received from Desert Schools Federal Credit Union, respondent did not address this amount on brief or at trial or provide any third party payor information. The Court assumes that respondent has conceded this amount. See also supra note 3.

timely filed a joint petition disputing the determinations with this Court.[6]

Petitioners did not file tax returns for 2001 as reflected by Form 4340, Certificate of Assessments, Payments and Other Specified Matters, dated October 1, 2004, for each petitioner. During 2004, Terry wrote a letter, in response to respondent's correspondence and proposed audit adjustments for his 2001 taxable year, containing essentially tax protester rhetoric.

At trial, Terry generally agreed that for a living he "work[ed] on people's computers".  However, Terry did not characterize what he received in exchange for those services as taxable income compensation.  Terry described his receipts as being in exchange for his services, "People occasionally pay me in trade for my time, yes."

Respondent offered a copy of Terry's online resume listing his employment history, d.b.a Major Computer Services in Glendale, Arizona, from January 1981 to July 2003.  Terry described the Web site carrying his resume as "way out of date since it was put up in 1996 and it no longer is relevant", and he further stated that he "gained nothing from the website".  Terry

---

[6] The Court on Dec. 2, 2003, filed as a petition a letter received from petitioners, which was postmarked on Nov. 26, 2003. By an order dated Dec. 8, 2003, the Court directed petitioners to file an amended petition complying with the Rules of the Court as to form and content of a proper petition.  Petitioners filed an amended petition on Jan. 27, 2004.

confirmed that his online resume and Web site were in existence in 2001 and remained in existence as of the date of trial.

Terry acknowledged that in 2001 he had provided computer services for both Dollarhide and Lincoln, but, generally, he denied that he had received compensation for his services. Respondent provided copies of checks issued by Dollarhide to Major Computer Services and a copy of the Dollarhide general ledger showing the same check amounts issued to Terry Major as the vendor. Julie Yows, director of operations for Dollarhide, testified that in 2001 Dollarhide paid Terry for computer services rendered and issued him a Form 1099-MISC for 2001 reflecting total compensation of $18,407.94. Terry admitted that when he received the notice of deficiency claiming he received a Form 1099-MISC from Dollarhide, he did nothing to investigate what he apparently contended was an error by Dollarhide.

Louise was not present at trial. Although respondent, in an opening statement, referenced the deficiency and addition to tax for Louise, Terry did not address any items respondent listed in the notice of deficiency with respect to Louise.

Respondent presented as evidence the declaration of Donna Cooper, an employee in the tax department at Lincoln National Corporation which together with its affiliates is known as Lincoln Financial Group. Accompanying Ms. Cooper's declaration was a duplicate of the original Form 1099-MISC which Lincoln

issued to Terry in 2001 reflecting nonemployee compensation of $8,812.72. The declaration of Deborah S. Kerns, a paralegal analyst employee at Principal Life Insurance Company, was offered into evidence. Attached to Ms. Kerns's declaration was a copy of a Form 1099-INT issued to Louise for interest paid to her in 2001 in the amount of $343.58. Respondent also sought to admit into evidence the declaration of Marlene Mills, an employee of Mellon, and the attached Form 1099-B issued to Louise in 2001 for demutualization compensation received in the form of cash in the amount of $18,037.50. The Court admitted these declarations into evidence despite Terry's objections.

OPINION

## I. Contentions of the Parties

Petitioners contended that they were not required to file a Federal income tax return for the taxable year 2001. Specifically, they argued that they did not receive any amounts that constitute gross income and asserted that respondent's evidentiary documents were inadmissible. Petitioners raised tax protester arguments in opposition to the constitutionality of the filing requirement of section 6011.

Respondent claimed that petitioners earned income in the form of compensation and interest for 2001. Since petitioners did not provide any evidence or documentation to contradict respondent's evidence, respondent contended that the

determinations of petitioners' tax liability and additions to tax are correct.

II.  Admissibility of Respondent's Exhibits

Respondent introduced the following exhibits at trial to which Terry objected on the grounds that the declarations and accompanying documentation did not satisfy the substantive requirements of rule 803(6) and rule 902(11) of the Federal Rules of Evidence:  (1) Copies of Form 4340, for each petitioner for 2001; (2) declarations of (and accompanying Forms 1099) Julie Yows, Donna Cooper, Deborah S. Kerns, and Marlene Mills; and (3) copies of three checks from Dollarhide payable to Major Computer Services.[7]

In general, section 7453 and Rule 143(a) provide that Tax Court proceedings shall be conducted in accordance with the rules of evidence (Federal Rules of Evidence) applicable in trials without a jury in the United States District Court for the District of Columbia.  Clough v. Commissioner, 119 T.C. 183, 188 (2002).

---

[7] The Court notes that respondent submitted two exhibits consisting of checks from Dollarhide to Major Computer Services. At trial, Terry objected to one of the two exhibits, identified as "8-R", but he did not offer any objection to an exhibit that was substantially similar, identified as "7-R".  The Court admitted both exhibits into evidence.  However, on brief, it appears that petitioners now object to the admission of both exhibits "7-R" and "8-R".

A. <u>Form 4340, Certificate of Assessments, Payments and</u>
<u>Other Specified Matters</u>

Fed. R. Evid. 902 sets forth the rules for self-authentication of various types of evidence. The Court has thoroughly examined the copies of Form 4340 presented by respondent, and the Forms 4340 meet the requirements under Fed. R. Evid. 902(1) for admissibility.

B. <u>Declarations and the Accompanying Forms 1099</u>

Respondent provided third party records, the Forms 1099, accompanying the declarations of Ms. Yows, Ms. Cooper, Ms. Kerns, and Ms. Mills. Rule 803 of the Federal Rules of Evidence specifies exceptions to the general rule, Fed. R. Evid. 802, excluding hearsay. The Court's examination of the declarations and their respective attached Forms 1099 reveals that such records were kept in the course of a regularly conducted business activity. Except for the Dollarhide checks, the exhibits were made available to petitioner at least 14 days before the calendar call and the trial as required by the Court's pretrial order. The Dollarhide checks were made available to petitioners 4 days before the trial and were also admitted as rebuttal exhibits.

The Court is satisfied that each payor is a "business" for purposes of Fed. R. Evid. 803(6) and Fed. R. Evid. 902(11). Neither Fed. R. Evid. 803(6) nor Fed. R. Evid. 902(11) requires that the custodian of the record have any personal knowledge of

the recorded facts.  What is required is the custodian's certification that the records were made by a person with knowledge of the matters recorded therein.  Each of the custodians here certified that the records were made in the course of the business's regularly conducted activity, and a duplicate or copy of the original Form 1099 accompanied the declaration of each custodian.

Although Fed. R. Evid. 1002 requires an original to prove the content of a writing, Fed. R. Evid. 1003 generally allows duplicates, as defined in Fed. R. Evid. 1001(4), to be admitted into evidence "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."  Likewise, Rule 143(d) allows a copy to be "admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original or in the circumstances it would be unfair to admit the copy in lieu of the original."  Petitioners have not questioned the authenticity of the original, nor have they demonstrated that admission of the duplicates or copies would be unfair under the circumstances.  Thus, the Court finds that the declarations and the Forms 1099 are sufficient, and such records satisfy the requirements of Fed. R. Evid. 803(6) and Fed. R. Evid. 902(11).  Clough v. Commissioner, supra at 190.  Moreover, petitioners did

not present any arguments that the records received into evidence were unreliable.

C.    Copies of Checks From Dollarhide

Petitioners further claimed that copies of checks from Dollarhide offered by respondent were not a complete record since they were only copies of the front of the checks and not the back of the checks.  Checks are admissible as commercial paper under Fed. R. Evid. 902(9).  "A check is a negotiable instrument, a legally operative document, and falls within the category of 'verbal acts' which are excludable from the hearsay rule." Spurlock v. Commissioner, T.C. Memo. 2003-124 (citing Advisory Committee's Note to Federal Rule of Evidence 801(c)). Furthermore, checks are self-authenticating documents under Fed. R. Evid. 902(9).  United States v. Hawkins, 905 F.2d 1489, 1494 (11th Cir. 1990); United States v. Little, 567 F.2d 346 n.1 (8th Cir. 1977).  Self-authenticating documents are not considered hearsay.  Since the checks are admissible documents, copies of the checks are admissible under Rule 143(d).  See Fed. R. Evid. 1003.  Petitioners' contention does not impugn the authenticity of the original, nor have they shown that the introduction of the checks copies would be unfair.  In the present case, it is not necessary that copies of both the front and the back of the check be presented for the copies of the front of the check to be admitted into evidence.  See United States v. Hawkins, supra at 1494.

D.    Forms 1099 and 1096

Petitioners offer an additional argument against admitting the Forms 1099.  They maintain that copies of Forms 1099 were not complete and could not have been prepared in the normal course of business because they did not also include a Form 1096, Annual Summary of Transmittal of U.S. Information Returns.  Although the Court holds that the Forms 1099 are admissible, we address petitioners' argument.

A Form 1099 shows the amount paid by the payor to the recipient listed in the form for a certain taxable year.  In this case, petitioners received two Forms 1099-MISC, Form 1099-B, and Form 1099-INT.  Each Form 1099 was attached to a declaration, which, as discussed previously, satisfied Fed. R. Evid. 803(6) and Fed. R. Evid. 902(11).  The purpose of Form 1096 is to transmit paper forms such as Form 1099 to the Internal Revenue Service.  As the title implies, Form 1096 summarizes the information contained in all the forms transmitted with it. Forms 1099 supply the details underlying Form 1096.  United States v. Carroll, 345 U.S. 457, 459 (1953).  Form 1096 effectively acts as a verifying cover sheet to the Internal Revenue Service for transmitted Forms 1099, providing information on who is submitting the attached forms, the total number of forms submitted, the total amount listed on the forms, and the total amount of Federal income tax withheld on the forms.  United States v. Yagow, 953 F.2d 423, 425 (8th Cir. 1992).  It is not

necessary for Form 1096 to accompany Form 1099 for a Form 1099 to be a record that satisfies the requirements of Fed. R. Evid. 803(6) and Fed. R. Evid. 902(11). See Spurlock v. Commissioner, supra.

E.   Petitioners' Opportunity To Challenge Records

Petitioners contend that the declarations and the underlying records should be excluded because they were not provided with sufficient time to challenge the adequacy of their foundation. Thus, petitioners claim they were not given a fair opportunity to challenge the documents under the notice requirement of Fed. R. Evid. 902(11). The notice requirement directs that a proponent of the evidence must provide both the records sought to be introduced, as well as the declaration of the custodian of those records "sufficiently in advance of their offer into evidence".

The Court finds that respondent has complied with the notice requirement. Respondent provided copies of his exhibits or unsigned proposed exhibits and gave written notice to petitioners of the possibility of introducing those exhibits and proposed exhibits as evidence under Fed. R. Evid. 803(6) and Fed. R. Evid. 902(11) on October 1, 2004, more than 2 weeks before the October 18, 2004, calendar call. Exchange of the documents by that date was in accordance with the Court's Standing Pretrial Order of May 14, 2004. Respondent identified the declarants, the payors involved, and the underlying records to be introduced by the declarations. Petitioners were, therefore, adequately informed

of the information in advance of trial, and petitioners had sufficient time to contact any witnesses named in respondent's trial memorandum and payors listed in the notices of deficiency. A deposition or other types of discovery were not the only opportunities available to petitioners to challenge respondent's records, for petitioners had the opportunity to call those witnesses or parties to testify at trial.

Petitioners also argue that certain records comprised of the Dollarhide checks and the declaration of Marlene Mills should be excluded because respondent failed to meet the provisions of the Court's Standing Pretrial Order, dated May 14, 2004, requiring the exchange of documents 14 days prior to the trial session. The Court admitted these documents at trial for the purpose of impeachment. In this case, respondent sought to impeach the direct testimony of Terry. With respect to impeachment of a witness, Fed. R. Evid. 607 provides that "The credibility of a witness may be attacked by any party, including the party calling the witness." Further, the Court's Standing Pretrial Order does not mandate exclusion of any exhibit not exchanged at least 14 days before the calendar call. It provides only: "The Court may refuse to receive in evidence any documentation or material not * * * exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown." The Court is satisfied that the Dollarhide checks were admissible.

Respondent provided to petitioners the written declaration of Marlene Mills, a Mellon employee, outside the Standing Pretrial Order's minimum time period for the exchange of documents. That document was not in existence until October 7, 2004, and accordingly, it could not be exchanged within the Court's requirement of 14 days before the trial session. The Court does not find that exclusion of the declaration is proper considering the declaration only replaced the previous defective declaration of Latoshia Desir, another Mellon employee.

Ms. Desir's declaration, which was provided to petitioners in compliance with the Court's rule on document exchanges prior to trial, did not comply with Fed. R. Evid. 902(11); therefore, respondent offered another declaration, that of Ms. Mills, meeting the requirements of Fed. R. Evid. 902(11). The records accompanying Ms. Mills's declaration contained the same content as Ms. Desir's declaration. Petitioners argue that the new records reflected a change in one of respondent's arguments, but the Court is convinced that petitioners were sufficiently aware of this argument in advance since it was referenced in petitioners' own pretrial memorandum. Additionally, petitioners objected to the admission of Form 1099-B in the Stipulation of Facts, in turn, acknowledging that respondent was seeking to introduce Form 1099-B as evidence of the $18,037.50 amount from Principal Life Insurance Company. See Rodriquez v. Commissioner, T.C. Memo. 2005-12. Consequently, the Court believes that

petitioners had sufficient notice to reasonably contest the documents, and, thus, the Court admitted the documents into evidence.

## III. Petitioners' Income Tax Liability

### A. Burden of Proof

In general, the Commissioner's determination of a taxpayer's tax liability is presumed correct, and the taxpayer bears the burden of proving that respondent's determination is improper. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The "presumption of correctness" is appropriate where respondent has furnished evidence linking the taxpayer to the "tax generating activity". Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559. If respondent introduces evidence that the taxpayer received unreported income, then the burden shifts to the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary and erroneous. Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97; see also Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982) ("[T]he Commissioner's assertion of deficiencies are presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received unreported income."). In this case, respondent need only present some substantive evidence that petitioners received income in 2001 to shift the burden to petitioners. Hardy v. Commissioner, supra at

1005.  The Court finds that Forms 1099 demonstrate that Terry received income constituting sufficient evidence in this case. Likewise, Form 1099-B shows that Louise Major received income from "stocks, bonds, etc.", and Form 1099-INT reveals that Louise Major received income from interest.  Consequently, respondent provided sufficient evidence linking petitioners to the income underlying the statutory notices of deficiency.[8]

However, section 7491 may shift the burden to respondent in specified circumstances, for example, where the taxpayer produces "credible evidence".  Sec. 7491(a)(1).  The legislative history of section 7491 clarifies the meaning of "credible evidence":

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the Secretary has not sustained his burden of proof. * * * [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

In addition, to effectuate a shift in the burden, petitioners must also maintain all records required by the Code and regulations thereunder and cooperate with reasonable requests by

---

[8] This is with exception to amounts referred to <u>supra</u> notes 3 and 5.

the Secretary for witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2).  Petitioners here did not satisfy the prerequisites under section 7491(a)(1) and (2) for such a shift.  Consequently, except for additions to tax subject to section 7491(c), as to which respondent bears the burden of production, petitioners bear the burden of persuasion and the burden of production in this case.

B.    Filing Requirement

The Code imposes a Federal tax on the taxable income of every individual.  Sec. 1.  Gross income for the purposes of calculating taxable income is defined as "all income from whatever source derived".  Sec. 61(a).  Every U.S. resident individual whose gross income for the taxable year equals or exceeds the exemption amount is required to make an income tax return.[9]  Sec. 6012(a)(1)(A).  Petitioners had aggregate gross income totaling at least $44,971.74, and each individually had gross income totaling at least $18,381.08 for taxable year 2001.  Both petitioners' gross incomes exceeded the filing threshold for the 2001 taxable year, and petitioners were, therefore, required to file an income tax return.[10]

_____

[9] Terry denied he was a "U.S. person"; however, at trial, he asserted that he was a "citizen of the United States".  Section 7701(a)(30) defines the term "United States person" as, inter alia, a "citizen or resident of the United States".

[10] In petitioners' letter, contained in the record, Terry makes reference to the validity of the filing requirement.  Our
(continued...)

C.  Petitioners' Taxable Income

    1.  Terry I. Major's Income

Terry contended that he did not receive any income as defined in section 61 for the taxable year 2001, but he did not offer any evidence supporting his position.  Respondent, on the other hand, provided documentation showing that Terry earned income of at least $26,590.66 in 2001.

Terry's online resume established that he was a computer consultant for Major Computer Services.  Ms. Yows confirmed:  (1) Terry furnished computer services for Dollarhide in 2001; (2) Dollarhide paid Terry shortly after receiving invoices from him; and (3) Dollarhide issued Terry a Form 1099-MISC for 2001.  Respondent also provided Forms 1099-MISC for both Dollarhide and Lincoln for 2001.  Terry offered no evidence or testimony contesting respondent's evidence.  Terry had the opportunity to cross-examine respondent's two witnesses to attempt to elicit favorable testimony, but he chose not to.  The Court therefore sustains the deficiency determined by respondent with respect to Terry.

---

[10](...continued)
tax system, the Code, and the Tax Court have been firmly established as constitutional.  Crain v. Commissioner, 737 F.2d 1417, 1417-1418 (5th Cir. 1984); Ginter v. Southern, 611 F.2d 1226, 1229 (8th Cir. 1979); Rev. Rul. 2005-19, 2005-14 I.R.B. 819.

### 2. Louise Major's Income

In support of respondent's position, respondent provided Form 1099-B and the declaration of Marlene Mills, a Mellon employee, evidencing that in 2001 Louise Major received $18,037.50 of demutualization[11] income in the form of cash and Form 1099-INT, reflecting interest income of at least $343.58.

Louise did not appear at trial. While Terry was present at trial, he did not offer any evidence contesting Louise's deficiency or addition to tax.[12] Thus, respondent's determination of Louise's deficiency is sustained.

---

[11] Demutualization, as it applies here, is the process of converting from a mutual insurance company to a stock company pursuant to a written plan of conversion. Prior to Oct. 26, 2001, Louise had an interest in an insurance policy administered by Principal Financial Group, Inc., a mutual insurance company. On Oct. 26, 2001, Principal Financial Group, Inc.'s initial public offering became effective. Demutualization of the company also became effective on this same date. On Dec. 10, 2001, Mellon distributed demutualization compensation to the former Principal Financial Group, Inc. policyholders. Former policy holders could choose to receive their demutualization compensation in the form of Principal Financial Group, Inc. common stock, cash, or policy credits. As stated above, Louise received $18,037.50 in cash as demutualization compensation.

[12] In petitioners' pretrial memorandum and in an objection to stipulation #9 in the Stipulation of Facts, they contended that the amounts received from Mellon should be treated as a return of premium or excess premium and, thus, not income. Petitioners also confirmed that Louise received these amounts in cash. However, since petitioners did not argue this assertion on brief or at trial, the Court deems that petitioners have abandoned it.

IV.  Additions to Tax

With respect to the examinations beginning after July 22, 1998, the Commissioner bears the burden of production in any court proceeding involving an individual's liability for penalties or additions to tax.  Sec. 7491(c).  To meet this burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty or addition to tax.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  In instances where an exception to the penalty or addition of tax is afforded upon a showing of reasonable cause, the taxpayer bears the burden of showing such cause.  Id. at 447.

Section 6651(a) provides for a 5-percent addition to tax for each month or portion thereof that the return is filed late, not to exceed 25 percent in the aggregate, imposed upon a taxpayer for failure to timely file a tax return, unless such failure to file is due to reasonable cause and not due to willful neglect.  Although not defined in the Code, "reasonable cause" is viewed in the applicable regulations as the "exercise of ordinary business care and prudence".  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs; see also United States v. Boyle, 469 U.S. 241, 246 (1985).  "Willful neglect" can be interpreted as a "conscious, intentional failure or reckless indifference."  United States v. Boyle, supra at 245.  With respect to section 6651(a) additions to tax,

reliance on misguided constitutional beliefs is not reasonable. Edwards v. United States, 680 F.2d at 1271 n.2; see also Ginter v. Southern, 611 F.2d 1226, 1229 (8th Cir. 1979).

On the basis of the record in this case, the Court concludes that respondent's relevant burdens of production and proof have been met. Specifically, respondent provided Forms 4340 showing that petitioners did not file a return for the 2001 taxable year. Petitioners have not provided any evidence that they filed a tax return for 2001 or that their failure to file was due to reasonable cause. Therefore, the Court sustains the imposition of an addition to tax under section 6651(a)(1).

V.   Section 6673 Penalty

Section 6673 allows this Court to award a penalty to the United States in an amount not in excess of $25,000 for proceedings instituted by the taxpayer primarily for delay or for proceedings in which the taxpayer's position is frivolous or groundless. "A petition to the Tax Court, or a tax return, is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)(imposing penalties on taxpayers who made frivolous constitutional arguments in opposition to the income tax). Courts have ruled that constitutional defenses to the filing requirement, such as petitioner presents, are groundless and wholly without merit.

<u>Ginter v. Southern</u>, <u>supra</u> at 1229; see also <u>Williams v. Commissioner</u>, T.C. Memo. 1999-277; <u>Morin v. Commissioner</u>, T.C. Memo. 1999-240; <u>Sochia v. Commissioner</u>, T.C. Memo. 1998-294 (all of which imposed a section 6673 penalty for tax protester arguments).

> Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants.  Once the legal system has resolved a claim, judges and lawyers must move on to other things.  They cannot endlessly rehear stale arguments.  Both appellants say that the penalties stifle their right to petition for redress of grievances.  But there is no constitutional right to bring frivolous suits, see <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983).  People who wish to express displeasure with taxes must choose other forums, and there are many available. * * * [<u>Coleman v. Commissioner</u>, <u>supra</u> at 72.]

Respondent has not sought a section 6673 penalty in this case, and the Court declines to impose such a penalty today.  However, the Court explicitly admonishes petitioners that they may, in the future, be subject to a penalty under section 6673 for any proceedings instituted or maintained primarily for delay or for any proceedings which are frivolous or groundless.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we have found them to be meritless, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.