T.C. Memo. 2005-154

UNITED STATES TAX COURT

ALAN D. STANG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6371-03, 19150-03.    Filed June 27, 2005.

R determined deficiencies and additions to tax for P's 1999, 2000, and 2001 taxable years.

<u>Held</u>:  P received unreported income in the form of wages and nonemployee compensation during 1999, 2000, and 2001, upon which he is liable for Federal income taxes.

<u>Held</u>, <u>further</u>, P is liable for self-employment taxes pursuant to sec. 1401, I.R.C., on income earned in the form of nonemployee compensation during 2000 and 2001.

<u>Held</u>, <u>further</u>, P is liable for the sec. 6651(a)(1), I.R.C., addition to tax for failure timely to file income tax returns for each of the years in issue.

<u>Held</u>, <u>further</u>, P is liable for the sec. 6654, I.R.C., addition to tax for failure to pay estimated tax for the years 1999 through 2001.

Held, further, a penalty under sec. 6673, I.R.C., is due from P and is awarded to the United States in the amount of $5,000

Alan D. Stang, pro se.

Stephen S. Ash, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined the following deficiencies and additions to tax with respect to petitioner's Federal income taxes for the taxable years 1999 through 2001:[1]

| | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
|---|---|---|---|
| 1999 | $3,596 | $899.00 | $174.01 |
| 2000 | 15,137 | 3,784.25 | 808.54 |
| 2001 | 7,501 | 1,875.25 | 299.77 |

The issues for decision in these consolidated cases are:

1) Whether petitioner received unreported income in the form of wages and nonemployee compensation from The Gem City Engineering Company (GCE) during 1999, 2000, and 2001, upon which he is liable for Federal income taxes;

(2) whether petitioner is liable for self-employment taxes pursuant to section 1401 on income earned in the form of nonemployee compensation during 2000 and 2001;

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

(3) whether petitioner is liable for the section 6651(a)(1) addition to tax for failure timely to file income tax returns for the taxable years 1999 through 2001;

(4) whether petitioner is liable for the section 6654 addition to tax for 1999, 2000, and 2001 on account of failure to pay estimated income taxes; and

(5) whether the Court should impose a penalty under section 6673.

FINDINGS OF FACT

Some of the facts have been deemed stipulated pursuant to Rule 91(f). The deemed stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed in these cases, petitioner resided in Arizona.

Petitioner was hired by GCE, a firm providing engineering services, with a starting date of January 8, 1996. Petitioner had a background in electronics and was employed as a field service technician. In conjunction with his employment, petitioner on January 4, 1996, signed a Form W-4, Employee's Withholding Allowance Certificate, claiming he was exempt from Federal income tax withholding requirements.

Respondent's administrative file further reflects that petitioner subsequently, in January of 1997, executed a statement asserting that he was a sovereign citizen of Arizona; a Form W-8, Certificate of Foreign Status; another Form W-4 claiming

exemption from Federal income tax withholding; a document entitled "AFFIDAVIT OF CITIZENSHIP AND DOMICILE"; and a document entitled "AFFIDAVIT OF CLAIMS FOR EXEMPTION AND EXCLUSION FROM GROSS INCOME OF REMUNERATION, WAGES AND WITHHOLDING". The affidavits enumerated a litany of typical tax-protester assertions, including that the Internal Revenue Code was Federal legislation inapplicable to him as a citizen of one of the 50 States and therefore not within the territorial jurisdiction of the United States, that wages and remuneration for labor were property not subject to indirect taxation, and that the income tax was voluntary.

During 1999, petitioner received $31,027[2] in wages from GCE, from which no Federal income tax was withheld. GCE issued to petitioner and filed with the Internal Revenue Service (IRS) a Form W-2, Wage and Tax Statement, reflecting these wages. During 2000, petitioner received total compensation of $60,930 from GCE, comprising $32,054 in wages for which a Form W-2 was issued and $28,876 in nonemployee compensation for which a Form 1099-MISC, Miscellaneous Income, was issued.[3] No Federal income tax was

---

[2] For consistency with the notices of deficiency and the deemed stipulation of facts, the monetary amounts of the compensation received by petitioner have been rounded to the nearest dollar.

[3] It appears from the record that, on or about June 5, 2000, GCE treated petitioner's employment status as having changed from that of an employee to that of an independent contractor.

withheld from these amounts.  Similarly, during 2001, petitioner received $31,779 in nonemployee compensation from GCE for which a Form 1099-MISC was issued and from which no Federal income tax was withheld.

Petitioner did not file Federal income tax returns for the years 1999, 2000, and 2001.  On January 22, 2003, respondent issued to petitioner a notice of deficiency with respect to 1999, and on August 8, 2003, respondent likewise issued to petitioner a separate notice of deficiency for each of the years 2000 and 2001.  Therein respondent determined the deficiencies and additions to tax referenced above.  The deficiencies were based solely on the compensation paid to petitioner by GCE.

Petitioner's petitions disputing these determinations, having been postmarked timely, were filed with the Court on April 28, 2003, as to 1999, and on November 10, 2003, as to 2000 and 2001.  The petitions are substantially identical, each asserting that petitioner "did not receive any taxable income from any taxable source" during the subject years and that, even if income can be attributed to him, he "would still be entitled to the deductions, allowances and credits that the examining Revenue Officer failed to even request from the Petitioner." Petitioner then prays that the Court dismiss the notices of

deficiency, determine that there is a zero deficiency for each year, and award petitioner costs and fees.[4]

The case for 1999 was initially set for trial at the Court's March 1, 2004, session in Phoenix, Arizona. Prior to the session, the parties on January 13, 2004, held a conference pursuant to Branerton Corp. v. Commissioner, 61 T.C. 691 (1974). At the conference, counsel for respondent urged petitioner to abandon his positions regarding nonliability for Federal income tax and provided him with copies of cases rejecting such arguments. Petitioner responded to subsequent attempts by respondent to prepare a stipulation of facts with objections on Fifth Amendment grounds.

At the call of the calendar in Phoenix on March 1, 2004, petitioner filed a motion to continue describing a recent heart-related medical condition. Counsel for respondent voiced concerns stemming from the arguments and Fifth Amendment assertions advanced by petitioner. Counsel further informed the Court that he had consulted with the IRS Criminal Investigation Division and had ascertained that petitioner was not under criminal investigation. The Court granted petitioner's motion but warned petitioner that "your position is somewhat extreme"

---

[4] The Court notes that to the extent that the petitions seek reasonable administrative and/or litigation costs pursuant to sec. 7430, any such claims are premature and will not be further addressed. See Rule 231.

and that the Court would entertain any motions either side wished to make, including "a motion under Rule 91(f) to force stipulation".  The two cases were later consolidated and calendared for trial at the Court's October 18, 2004, session in Phoenix.

On August 10, 2004, respondent sent to petitioner a letter scheduling a second pretrial conference pursuant to Branerton Corp. v. Commissioner, supra, for August 18, 2004.[5]  Respondent also cautioned petitioner to review and consider the information he had previously been provided regarding his legal arguments and Fifth Amendment assertions.  Petitioner responded with a letter dated August 18, 2004, stating that his health problems prevented a face-to-face meeting and that respondent was in error with regard to the validity of petitioner's Fifth Amendment objections.  Petitioner indicated that he would continue to assert the Fifth Amendment in response to proposed stipulations of fact and that if respondent should seek an order to show cause under Rule 91(f), petitioner would request appropriate sanctions for unnecessarily multiplying the litigation.

On August 19, 2004, respondent sent to petitioner a letter enclosing a proposed stipulation of facts.  This letter was

---

[5] The Court notes that respondent's motion to impose a sec. 6673 penalty refers, in an apparent typographical error, to this letter as having been sent on Aug. 19, 2004.  The copy of the letter itself contained in the record is dated Aug. 10, 2004.

eventually followed on September 3, 2004, with the filing by respondent of a motion under Rule 91(f) for an order to show cause why proposed facts in evidence should not be accepted as established. Therein respondent also updated the Court that as of the date of the motion, no criminal investigation of petitioner was being pursued. The Court granted respondent's motion and on September 7, 2004, issued to petitioner an order to show cause in writing on or before September 27, 2004, why the matters set forth in respondent's proposed stipulation of facts and accompanying exhibits should not be accepted as established.

On October 4, 2004, the Court received from petitioner a response, postmarked timely, to the order to show cause. The response reflected that petitioner objected to each stipulation, other than the perfunctory statements identifying the notices of deficiency and petitioner's address, on grounds of the Fifth Amendment. Petitioner also made the further objection that copies of checks from GCE payable to petitioner were hearsay and secondary evidence. In advocating the propriety of his Fifth Amendment stance, petitioner placed particular reliance on United States v. Nipper, 210 F. Supp. 2d 1259 (N.D. Okla. 2002). After reviewing petitioner's submissions, the Court on October 6, 2004, issued an order making absolute the order to show cause and deeming established for purposes of these cases the matters set

forth in the proposed stipulation of facts and accompanying exhibits.

Prior to trial, on October 1, 2004, respondent served on petitioner a copy of respondent's pretrial memorandum. The memorandum discussed issues raised in the notices of deficiency and additionally, among other things, noted an intention on the part of respondent to request imposition of a penalty under section 6673 and potentially to address certain evidentiary concerns through presentation of a declaration at trial pursuant to rules 803(6) and 902(11) of the Federal Rules of Evidence.

The cases were tried on October 20, 2004. At the outset of the proceedings, counsel for respondent sought to move into evidence the exhibits accompanying the deemed stipulation of facts. Petitioner repeated his Fifth Amendment and hearsay objections. The Court overruled these objections and admitted the exhibits, cautioning petitioner that frivolous arguments made for purposes of delay could result in the imposition of additional penalties. Petitioner declined to offer any testimony or evidence, stating: "I have no witnesses. I have no documents. And basically as I've stated, I believe that the Internal Revenue Service has the initial burden of proof. And they haven't met that so I may remain silent until they have met that."

Counsel for respondent then sought to enter additional corroborative evidence in support of respondent's position. Respondent first offered the declaration of Missy Wittman, the human resources and payroll manager for GCE, with attached documents relating to petitioner's employment and pay, under rules 803(6) and 902(11) of the Federal Rules of Evidence. Respondent indicated that the materials had been provided to petitioner prior to trial, and petitioner corroborated that he had been given the documents "two weeks ago". Petitioner, however, objected to their admission, complaining that the timing had not permitted him a fair opportunity to challenge the materials and that various documents constituted hearsay, were incomplete, and were secondary evidence. The Court overruled the objection and admitted the exhibit.

Respondent next sought to enter under rule 902(1) of the Federal Rules of Evidence a Certificate of Official Record, Information Returns Processing File (IRP) On-Line Transcript, for petitioner's taxable years 1999, 2000, and 2001. The document was an original signed and under seal. Petitioner objected that the document was created from hearsay, but the Court again overruled the objection.

Respondent then called to the stand Wayne Johnson, a revenue agent, who testified with regard to maintenance of computer records and transcripts within the IRS. On the basis of this

testimony, respondent offered computer transcripts of account for petitioner's 1998 through 2001 years under rule 803(6) or (8) of the Federal Rules of Evidence.[6]  Petitioner once more objected that the transcripts were hearsay and were created from hearsay, but these complaints were overruled and the exhibit was received into evidence.

Following the trial, respondent on October 22, 2004, filed a motion to impose a penalty under section 6673.  Each party also filed a posttrial brief.

OPINION

I.  Contentions of the Parties

On brief, petitioner's essential premise is that respondent bears the burden of proving receipt of unreported income, and respondent failed to meet that burden here.  Petitioner argues that because the business records accompanying the declaration of GCE's human resources and payroll manager are inadmissible, no evidence supports the determinations made in the notices of deficiency.  Specifically, petitioner contends that these materials are inadmissible because:  (1) The documents were untimely provided under rule 902(11) of the Federal Rules of Evidence; (2) the records are incomplete; and (3) the records are

---

[6] Although the transcript indicates that counsel for respondent inadvertently referred to rule "802(6) or (8)", it is clear that rule 803(6) or (8) of Federal Rules of Evidence was intended.

secondary evidence.  He also makes a brief reference to Rule 143(b) as a basis for excluding the declaration of Ms. Wittman.

In contrast, it is respondent's position that the record in these cases establishes petitioner's receipt of unreported income from GCE and consequent liability for income taxes, self-employment taxes, and additions to tax thereon.  For the reasons detailed below, the Court agrees with respondent.

II.  Fifth Amendment

As previously indicated, certain of the facts for purposes of these cases were deemed stipulated pursuant to Rule 91(f). The Court determined petitioner's objections to the proposed stipulations of fact, premised principally on the Fifth Amendment, to be without merit.  Because petitioner reiterated at trial that he believed such objections were "a proper application of the Fifth Amendment rights", a few preliminary remarks on this issue are in order.

In the words of the U.S. Supreme Court:  "It is well established that the [Fifth Amendment] privilege protects against real dangers, not remote and speculative possibilities." Zicarelli v. New Jersey State Comm. of Investigation, 406 U.S. 472, 478 (1972); see also McCoy v. Commissioner, 696 F.2d 1234, 1236 (9th Cir. 1983) ("A valid Fifth Amendment objection may be raised only to questions which present a real and appreciable

danger of self-incrimination." (internal quotations omitted)), affg. 76 T.C. 1027 (1981).

Having reviewed relevant caselaw on the matter, the Court is satisfied that this litigation is not materially distinguishable from cases such as Wheelis v. Commissioner, T.C. Memo. 2002-102, affd. 63 Fed. Appx. 375 (9th Cir. 2003); Lee v. Commissioner, T.C. Memo. 2002-95, affd. 61 Fed. Appx. 471 (9th Cir. 2003); and Ruocco v. Commissioner, T.C. Memo. 2002-91, affd. 346 F.3d 223 (1st Cir. 2003). In the foregoing cases, all involving contentions nearly identical to those raised here, the Court rejected the taxpayers' Fifth Amendment arguments as follows:

> The phrase that comes readily to mind was first used by the U.S. Supreme Court in United States v. Sullivan, 274 U.S. 259, 264 (1927), to wit, a taxpayer may not "draw a conjurer's circle around the whole matter" of his or her tax liability. * * * In a civil tax case, the taxpayer must accept the consequences of asserting the Fifth Amendment and cannot avoid the burden of proof by claiming the privilege and attempting to convert "the shield * * * which it was intended to be into a sword". United States v. Rylander, 460 U.S. 752, 758 (1983) * * * [Wheelis v. Commissioner, supra.]

See also Lee v. Commissioner, supra; Ruocco v. Commissioner, supra.

In contrast, cases relied upon by petitioner, in particular United States v. Nipper, 210 F. Supp. 2d 1259 (N.D. Okla. 2002), are distinguishable. The court in that case reiterated that the constitutional standard required a "substantial and real" risk of incrimination. Id. at 1260. The court, noting that the

Government had already alleged that Mr. Nipper engaged in fraudulent conveyances to conceal income and assets, further concluded as a factual matter that Mr. Nipper had shown more than "just a fanciful possibility of prosecution". Id. at 1262. Here, respondent has repeatedly affirmed that no criminal investigation is pending with respect to petitioner and has never asserted fraud on petitioner's part. The Court remains convinced that petitioner has established no real and reasonable fear of incrimination and that Rule 91(f) was properly applied notwithstanding his Fifth Amendment objections.

III. Unreported Income

The Internal Revenue Code imposes a Federal tax on the taxable income of every individual. Sec. 1. Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived". This broad definition encompasses "Compensation for services, including fees, commissions, fringe benefits, and similar items". Sec. 61(a)(1); see also sec. 1.61-2(a)(1), Income Tax Regs. Respondent has determined that petitioner received unreported wages and nonemployee compensation from GCE.

As a general rule, the Commmissioner's determinations are presumed correct, and the taxpayer bears the burden of proving error therein. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although section 7491(a) may shift the burden to the

Commissioner with respect to factual issues where the taxpayer introduces credible evidence, the provision operates only where the taxpayer establishes that he or she has complied with all substantiation requirements, has maintained all required records, and has cooperated with reasonable requests for witnesses, information, documents, meetings, and interviews. Here, as indicated above, petitioner introduced no evidence and failed to cooperate in the stipulation process or trial preparation. Section 7491(a) therefore effects no shift of burden in the instant cases.

However, two additional limitations on the general rule bear upon the case at bar. First, the Court of Appeals for the Ninth Circuit, to which appeal in the instant case would normally lie, has indicated that before the presumption of correctness will attach in an unreported income case, the determination must be supported by at least a "minimal" factual predicate or foundation of substantive evidence linking the taxpayer to income-generating activity or to the receipt of funds. Palmer v. United States, 116 F.3d 1309, 1312-1313 (9th Cir. 1997); see also Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Weimerskirch v. Commissioner, 596 F.2d 358, 361 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989). Second, section 6201(d) states:

> SEC. 6201(d). Required Reasonable Verification of Information Returns.--In any court proceeding, if a

taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary under subpart B or C of part III of subchapter A of chapter 61 by a third party and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

Here, respondent initially, in determining the disputed deficiencies, relied upon third-party information returns. Respondent also introduced at trial, through the declaration of Ms. Wittman, copies of the information returns and of checks and invoices showing payment by GCE to petitioner. Additional copies of checks from GCE payable to petitioner for 1999 had been deemed stipulated pursuant to Rule 91(f). Petitioner makes various arguments as to why these materials are inadmissible and thus insufficient to satisfy any pertinent burden born by respondent.

A. Rule 902(11) of the Federal Rules of Evidence

Petitioner alleges that the declaration and accompanying documents are inadmissible as self-authenticating business records under rules 902(11) and 803(6) of the Federal Rules of Evidence (hereinafter individual rules generally abbreviated in text Fed. R. Evid. 902, Fed. R. Evid. 803, etc.). Specifically, petitioner maintains that the materials were untimely provided for purposes of the notice requirement contained in Fed. R. Evid. 902(11). Fed. R. Evid. 902 enumerates forms of documentary

evidence as to which extrinsic evidence of authenticity is not a precondition to admissibility, including the following:

> (11) Certified Domestic Records of Regularly Conducted Activity.--The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record--

>> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

>> (B) was kept in the course of the regularly conducted activity; and

>> (C) was made by the regularly conducted activity as a regular practice.

> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

The Advisory Committee Notes accompanying the 2000 Amendments to the Federal Rules of Evidence, which added paragraphs (11) and (12) to Fed. R. Evid. 902, state: "The notice requirement in Rules 902(11) and (12) is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration."

Petitioner admits that the disputed declaration evidence was provided "a couple of weeks before calendar" but argues that he

was nevertheless deprived of a fair opportunity to challenge the underlying third-party records.  He submits that the meaning of a fair opportunity must be interpreted in light of the procedural rules governing a particular proceeding, which in these cases would be the Tax Court Rules of Practice and Procedure.  He further maintains that to be afforded an adequate opportunity to challenge the evidence, he would need to have been in receipt of the declaration with sufficient time under our Rules to conduct discovery, possibly a deposition, with respect thereto. Petitioner notes for example that Rule 70(a)(2) requires all discovery to be completed no later than 45 days prior to the call of the calendar.

The situation before the Court here is indistinguishable on this point from those addressed in Rodriguez  v. Commissioner, T.C. Memo. 2005-12, and Spurlock v. Commissioner, T.C. Memo. 2003-124.[7]  In postures nearly identical to that in the case at bar, the taxpayers in those case relied, inter alia, upon the notice requirement of Fed. R. Evid. 902(11) as a basis for exclusion of proffered declarations and business records (i.e., Forms W-2, Forms 1099, employee time reports, payroll records, paychecks, etc.).  Rodriguez  v. Commissioner, supra; Spurlock v. Commissioner, supra.  The Court was unpersuaded by their

_____

[7] See also Clough v. Commissioner, 119 T.C. 183, 188-191 (2002).

arguments for reasons that ring equally true here.  See <u>Rodriquez</u> <u>v. Commissioner</u>, <u>supra</u>; <u>Spurlock v. Commissioner</u>, <u>supra</u>.

For instance, in <u>Spurlock v. Commissioner</u>, <u>supra</u>, the Commissioner had indicated possible use of the declarations in a trial memorandum provided a little more than 2 weeks before trial and had provided the affidavits and records to the taxpayer 2 and 3 days before trial.  <u>Id.</u>  We concluded in those circumstances that the Commissioner had met the notice requirement of Fed. R. Evid. 902(11), stating:  "Petitioner was adequately apprised of this information in advance of trial.  Petitioner had sufficient time to contact the witnesses named in respondent's trial memorandum, and she could have called those witnesses to testify at trial."  <u>Id.</u>

The same observation applies to the instant litigation. Petitioner's complaints regarding the various time limits applicable to discovery provisions fail to take into account the straightforward expedient of calling Ms. Wittman as a witness. The Court is satisfied that admission into evidence of the declaration of Ms. Wittman and the attached business records did not run afoul of the notice requirement of Fed. R. Evid. 902(11).

B.  <u>Rule 803(6) of the Federal Rules of Evidence</u>

Petitioner further argues that even if the declaration was timely and provided him with a fair opportunity to challenge the underlying documents, the materials are nonetheless inadmissible

under the business records exception to hearsay rule.  His

objection is that the records are "incomplete"; i.e., "If they

were in fact prepared in the normal course of business a copy of

the transmittal document would have also been included."

Petitioner refers to the Forms W-3, Transmittal of Wage and Tax

Statements, and Forms 1096, Annual Summary and Transmittal of

U.S. Information Returns, that entities transmitting Forms W-2 to

the Social Security Administration and Forms 1099 to the IRS,

respectively, are required to file.  These transmittal documents

contain a jurat clause with a declaration under penalties of

perjury that the accompanying materials are true, correct, and

complete.

Fed. R. Evid. 803 provides, in relevant part:

RULE 803.  Hearsay Exceptions; Availability of
Declarant Immaterial

The following are not excluded by the hearsay
rule, even though the declarant is available as a
witness:

&ast;&ast;&ast;&ast;&ast;&ast;&ast;*   *   *   *   *   *   *

(6) Records of regularly conducted activity.-
-A memorandum, report, record, or data
compilation, in any form, of acts, events,
conditions, opinions, or diagnoses, made at or
near the time by, or from information transmitted
by, a person with knowledge, if kept in the course
of a regularly conducted business activity, and if
it was the regular practice of that business
activity to make the memorandum, report, record or
data compilation, all as shown by the testimony of
the custodian or other qualified witness, or by
certification that complies with Rule 902(11),
Rule 902(12), or a statute permitting

> certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Similar to petitioner here, the taxpayer in Spurlock v. Commissioner, supra, complained that failure to produce Forms W-3 and 1096, among other things, rendered the declarations in that case and records introduced thereunder inherently untrustworthy and unreliable. The Court dismissed that contention summarily. Id. Likewise, here suffice it to say that Forms W-2 and 1099 do not cease to be complete and distinct records prepared in the ordinary course of business merely because additional business records, such as Forms W-3 and 1096, are not proffered as evidence. See also Major v. Commissioner, T.C. Memo. 2005-141.

C. Rules 1002 and 1004 of the Federal Rules of Evidence

Petitioner also alleges that the Forms W-2 and 1099 are secondary evidence inadmissible without proper foundation under Fed. R. Evid. 1002 and 1004. He goes on to state: "Without that foundation by the Respondent showing why the paychecks themselves were not used by the Respondent to prove the actual receipt of the income or findings by this Court that the original paychecks were lost or destroyed, the secondary evidence used by the Respondent should not be considered."

As a threshold observation, we note that an apparently identical "secondary evidence" claim was rejected in <u>Rodriquez v. Commissioner</u>, T.C. Memo. 2005-12, without further discussion. Petitioner's application here is likewise without merit. In general, Fed. R. Evid. 1001 through 1008 address the admissibility of originals and/or duplicates to show the contents of a writing or record. The Forms W-2 and 1099 were at minimum properly introduced as duplicates of business records under Fed. R. Evid. 803(6), 902(11), and 1003, and quite possibly other rules as well. Moreover, because respondent also properly introduced under these rules copies (of both the front and back) of paychecks endorsed by petitioner, we fail to see any surprise, unfairness, or questions of accuracy or genuineness that could lend credibility to petitioner's complaints of secondary evidence. See <u>Spurlock v. Commissioner</u>, T.C. Memo. 2003-124 (discussing alternative bases for admission of various of the disputed documents in that case).

D. <u>Rule 143 of the Tax Court Rules of Practice and Procedure</u>

Finally, petitioner makes a brief reference to Rule 143(b) of our Rules and states that it should "trump" Fed. R. Evid. 902(11). Rule 143(b) provides that ex parte affidavits do not constitute evidence. Again, petitioner's reliance is misplaced. Respondent has not attempted to proffer an ex parte affidavit as

evidence in this proceeding.  The declaration of Ms. Wittman is the affidavit of a third-party witness, not the affidavit of respondent as the opposing party.  Rule 143(b) has no application in these circumstances.

E.  Conclusion

In conclusion, the Court affirms the admission into evidence at trial of the declaration of Ms. Wittman and the underlying business records.  The Court further is satisfied that the totality of the evidence in the record is sufficient to satisfy any pertinent burden of production placed on respondent with respect to the unreported income at issue here.  Moreover, the documents in the record provide more than ample support for respondent's determinations in this regard, and petitioner has offered no evidence or argument tending to show any error whatsoever in the determinations.  The Court holds that petitioner received from GCE unreported income in the amounts alleged in the notices of deficiency, i.e., wages of $31,027 and $32,054 in 1999 and 2000, respectively, and nonemployee compensation of $28,876 and $31,779 in 2000 and 2001, respectively.

III.  Self-Employment Tax

Section 1401 imposes an additional tax on the self-employment income of every individual, both for old age, survivors, and disability insurance and for hospital insurance.

The term "self-employment income" denotes "net earnings from self-employment".  Sec. 1402(b).  "Net earnings from self-employment", in turn, means "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business".  Sec. 1402(a).

Because, as explained above, the burden has not shifted to respondent under section 7491(a) with respect to the deficiency determinations, petitioner bears the burden of proving error in the statutory notices as regards the self-employment tax issue. Rule 142(a).  Respondent determined that petitioner is liable for self-employment taxes in the amounts of $4,080 and $4,490 by virtue of the nonemployee compensation received from GCE in 2000 and 2001, respectively.  Again, petitioner has offered no evidence or argument pertaining to the self-employment tax. Hence, to the extent that we have sustained respondent's determinations of unreported nonemployee compensation, we likewise sustain the imposition of the corresponding self-employment tax thereon.

IV.  Additions to Tax

Section 7491(c) places on the Commissioner the burden of production regarding additions to tax.  The burden with respect to "reasonable cause, substantial authority, or similar provisions" then shifts to the taxpayer.  Higbee v. Commissioner,

116 T.C. 438, 446 (2001). On the record presented in this case, respondent has carried the requisite burden of production with respect to the additions to tax under sections 6651(a)(1) and 6654.

Section 6651(a)(1) imposes an addition to tax for failure to file a required return on or before the prescribed filing date, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. "Willful neglect" denotes "a conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). "Reasonable cause" correlates to "ordinary business care and prudence". Id. at 246 & n.4; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Through the testimony of the revenue agent, along with transcripts and other documents admitted as evidence, respondent showed that petitioner was required to file a return for each of the subject years and failed to do so. Petitioner has offered no legitimate explanation for this failure. The Court holds that petitioner is liable for additions to tax under section 6651 for 1999, 2000, and 2001.

Section 6654 imposes an addition to tax for underpayment of estimated tax, subject to limited exceptions enumerated in subsection (e). The record here reflects an underpayment of estimated tax for each year in issue, and we do not find that any of the referenced exceptions is applicable. Imposition of an

addition to tax under section 6654 is sustained with respect to 1999, 2000, and 2001.

## V.  Section 6673 Penalty

Section 6673(a)(1) authorizes the Tax Court to require a taxpayer to pay a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless.

At trial in the instant case, the Court repeatedly warned petitioner about the possibility of sanctions for frivolous arguments advanced for purposes of delay.  Counsel for respondent likewise in his trial memorandum and during the proceedings indicated an intent to file motions under section 6673 and did so on October 22, 2004.

As noted in the preceding discussion, the meritless procedural contentions put forth throughout this litigation are indistinguishable from those rejected by the Court in cases such as Rodriquez v. Commissioner, T.C. Memo. 2005-12; Spurlock v. Commissioner, T.C. Memo. 2003-124; Wheelis v. Commissioner, T.C. Memo. 2002-102; Lee v. Commissioner, T.C. Memo. 2002-95; and Ruocco v. Commissioner, T.C. Memo. 2002-91.[8]  In each of the just-cited rulings, we characterized the positions maintained

---

[8] A number of these cases were expressly called to petitioner's attention, along with the corresponding citations, during the trial in the instant matters.

therein as frivolous and imposed a penalty under section 6673.
Rodriquez v. Commissioner, supra; Spurlock v. Commissioner,
supra; Wheelis v. Commmissioner, supra; Lee v. Commissioner,
supra; Ruocco v. Commissioner, supra. Petitioner's actions here
are equally insupportable, and a like treatment should obtain.
The Court concludes that a penalty of $2,500 should be awarded to
the United States in each of these two consolidated cases, for a
total penalty amount of $5,000.

    To reflect the foregoing,

                    Appropriate orders and
decisions for respondent will
be entered.