UNITED STATES of America and Thomas W. Valancius, Revenue Agent, Internal Revenue Service

v.

**UNION NATIONAL BANK.**

**Civ. A. No. 73–607.**

United States District Court,
W. D. Pennsylvania.

Aug. 15, 1973.

Thomas Daley, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiffs.

John A. Miller, Pittsburgh, Pa., for defendant.

Donn J. Smith, Pittsburgh, Pa., for petitioning intervenor.

## OPINION AND ORDER

SNYDER, District Judge.

This case comes before this Court on a Petition to Enforce an Internal Revenue Summons filed July 19, 1973, and a Petition for Leave to Intervene filed by the taxpayers.

The Summons previously served on the Union National Bank on June 8, 1973, required it to produce certain records of Donn J. Smith and Shirley S. Smith.[1] This proceeding to enforce the summons was brought pursuant to Sections 7402(b) and 7604(a) of the Internal Revenue Service Code of 1954 (26 U.S.C. §§ 7402(b) and 7604(a)). Upon the filing of the Petition, this Court entered an Order To Show Cause and fixed August 9, 1973, at 10:00 A.M. for hearing. On August 2, 1973, the respondent, Union National Bank of Pittsburgh, filed

[1] In the matter of the tax liability of Smith, Donn J. and Shirley S., Internal Revenue District of Pittsburgh, Pa. Period(s) 1969, 1970 and 1971. (203–24–0135) (195–24–5917)

THE COMMISSIONER OF INTERNAL REVENUE

TO John Bush—Vice-President & Cashier AT Union National Bank—4th & Wood Street

GREETINGS: You are hereby summoned and required to appear before Thomas W. Valancius, an officer of the Internal Revenue Service, to give testimony relating to the tax liability or the collection of the tax liability of the above named person for the period(s) designated and to bring with you and produce for examination the following books, records, and papers at the place and time hereinafter set forth:

All bank records, correspondence, documents and papers with respect to the above-named taxpayers, including but not limited to, the following: a. Bank statements b. Canceled checks c. Deposit slips d. Savings account records e. Savings certificates f. Records of all transactions with the bank for the years 1969, 1970 and 1971.

PLACE AND TIME FOR APPEARANCE: At Union National Bank—4th & Wood Street on the Twenty-fifth day of June, 1973 at 9:30 o'clock A.M. Failure to comply with this summons will render you liable to proceedings in the district court of the United States or before a United States commissioner or magistrate to enforce obedience to the requirements of this summons, and to punish default or disobedience.

ISSUED UNDER AUTHORITY OF THE INTERNAL REVENUE CODE this Eighth day of June, 1973.

s/Thomas W. Valancius
Signature

Tax Auditor
Title

an Answer to the Petition for Enforcement of the Summons in which it stated (1) that the taxpayer named in the petition had notified the bank that he intended to contest the validity of the Summons and directed the bank not to comply,[2] and (2) that Item (f) of the summons was overly broad and indefinite. On August 6, 1973, Mr. Donn J. Smith, one taxpayer named in the summons, filed a Petition for Leave to Intervene in which he alleged among other things that Section 7602 could not authorize the Internal Revenue Service to issue Summonses[3] and that such issuance clearly violated the United States Constitution, Article III, Section 2 and Amendments 1, 4, 5, 6, 7, 8, 9, 10, 13, and 14, and that the Internal Revenue Code was unconstitutional in that it neglected to compel the IRS or the taxpayer's bank to provide notice of any kind to the taxpayer when summonses are served on the taxpayer's bank. Numerous other claims of unconstitutionality were made[4] and request was made for

2. "Accordingly, I the undersigned, direct and command that you, The Union National Bank of Pittsburgh, Mr. John E. Bush, and all other officers and/or employees are not to reveal, divulge or disclose to any person, and more particularly to any agent or auditor of the Internal Revenue Service, under any excuse or pretext whatsoever, any information concerning or connected with deposits, withdrawals or any other thing concerning past, present or future accounts of any kind in your Bank.

"Please be advised that I plan to file an Action for an injunction and/or temporary restraining order against your Bank to prevent any violation of your fiduciary trust and exposure of privileged material in violation of my Constitutional and Civil rights. Please be advised further that I will otherwise prosecute to the uttermost any such violation of your fiduciary trust, or transgression of my rights and privileges under the U.S. Constitution, or any damages resulting therefrom. Furthermore I will prosecute to the uttermost any contravention of, or conspiracy with Mr. Valancius or any other individual or agency to contravene, any or all of such rights as are protected by 18 U.S. Code 241, 242.

"The inalienable rights guaranteed under the Bill of Rights are absolute, and cannot be violated because of 'public interest' or because of 'hardship' in the case, or because of 'case construction'; nor can these rights be lost thru legislation, administrative regulation, or judicial discretion."

3. "Intervener denies that the alleged Internal Revenue Summons can be judicially enforced, as the U.S. Constitution confers no power on the Executive Branch to issue a summons. 'Under the principle of separation of powers, it is settled that the Legislature may not confer Judicial functions upon members of the Executive Branch of government; . . .' (16 Am.Jur. 2nd No. 238). Issuance of a summons is a Judicial function, and therefore the Internal Revenue alleged summons is prohibited by the Constitution."

4. "1. Intervenor had no income in the "lawful money" sanctioned by the U.S. Constitution.

"2. The Internal Revenue Code is unconstitutional as it represents a delegation of judicial power to the executive branch in clear contravention of the U.S. Constitution.

"3. The Internal Revenue Code is unconstitutional as it provides the Marxian concept of a graduated income tax not provided by the 16th Amendment to the Constitution.

"4. The Internal Revenue Code is unconstitutional as it is predicated upon invasion of the taxpayer's privacy and clearly contravenes the 4th Amendment to the Constitution. '. . . . . The principle object of the 4th Amendment is the protection of privacy rather than property . . . .' ([Warden v. Hayden] 387 U.S. [293] 304, [306, 87 S.Ct. 1642, 18 L.Ed.2d 782]).

"5. The Internal Revenue Code is unconstitutional in that it neglects to compel either the IRS or the taxpayer's bank to provide notice of any kind to the taxpayer when summonses, levies, restraints, and the like are served upon the taxpayer's bank.

"6. The Internal Revenue Code is unconstitutional in that tax on individual incomes is assessed or not assessed depending upon the source of that income. For example, welfare recipients are required to pay no tax, while members of the Armed Forces (often receiving much lower incomes) are taxed.

"7. Administration of activities under the Internal Revenue Code is unconstitutional in that taxpayers of opposing political views can be harassed by IRS tax auditors and agents under instigation of the politicians in power. This has been illustrated repeatedly in recent weeks by evidence presented before the Senate Watergate Committee.

"8. The administration of the Internal Revenue Code is unconstitutional in that audit and other harassment procedures autho-

an injunction against the enforcement of the summons.

On August 9, 1973, this Court heard testimony on the Petition for Leave to Intervene and the Petition to Enforce the Internal Revenue Summons. At the hearing the only government witness was Thomas W. Valancius, now an Internal Revenue Agent, but who at the time of the issuance of the summons was a tax auditor. Mr. Valancius testified that a general audit was being conducted on the returns of Donn and Shirley Smith, that the bank records were necessary to properly investigate the tax return of the taxpayer, and that while the Intelligence Division of the IRS is that section concerned with investigating possible criminal prosecutions, at no time has the Intelligence Division been involved in this case, nor has any recommendation of any kind been made as to the possibility of any criminal prosecution of Mr. Donn Smith. Mr. Smith is a patent attorney and a member of the Virginia Bar and the Patent Bar, but is not a member of the Pennsylvania Bar. He did not wish to take the stand, but did make a statement under oath in which he reenumerated the averments of his petition.

The first question which this Court must resolve is whether or not the taxpayer under the facts of this case has a right to intervene. We believe that he does not.

■■■ The Supreme Court said in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) that there is no absolute right to intervene. Intervention is now permissive rather than mandatory. Before the Donaldson case, many courts had interpreted Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) as holding that intervention should be freely permitted as of right. Referring to the Reisman opinion, the Supreme Court in *Donaldson, supra,* said, 400 U.S. at page 529, 91 S.Ct. at page 541, 27 L.Ed. 2d at page 588:

"Similarly, the Reisman language set forth in n. 10, supra, does not guarantee intervention for the taxpayer. Certainly it recites that the proposed witness 'or any interested party' may attack the summons before the hearing officer, as well as before the District Court in any ensuing enforcement proceeding, and certainly it recites that the party summoned and one 'affected by a disclosure may appear or intervene' before the court. But this language, as well as subsequent comments in Reisman, is permissive only and is not mandatory.

"The language recognizes that the District Court, upon the customary

rized by the Code can be unequally applied. For example, politicians, powerful individuals, and people in the news or otherwise having notoriety are treated as "sensitive cases" and are subjected to much less stringent audits, *if any,* by the IRS. This is borne out by the attached material (exhibit A) supplied to intervenor by the IRS.

"9. With the exception of exhibit A, the IRS has refused to answer intervenors questions (letter to petitioner Valancius, exhibit B attached) under the Freedom of Information Act of 1967. A copy of such refusal (exhibit C) is attached.

"10. Intervenor has received no income in money issued by the Congress of the United States or whose value has been set by the Congress of the United States as required by the U.S. Constitution. In fact, the alleged money of this country is issued and its

value set by the Federal Reserve System, which is not an arm of government but a privately owned institution (1970 Encyclopedia Britannica vol. p.) The Federal Reserve System and its so-called money are unconstitutional, as Congress has no power to relegate its constitutional rights and duties either to another agency or branch of government or to a private association of any kind.

"11. The records to be seized by the alleged IRS summons are identified only in the haziest fashion. This is not the particularity required by Article IV of the U.S. Constitution.

"12. The alleged IRS summons attempts to seize Intervenor's records at least some of which are not the property of the Respondent. Pertinent case law depends on the seized records being the property of the Bank."

showing, may allow the taxpayer to intervene. Two instances where intervention is appropriate were specified, namely, where 'the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution' or where 'it is protected by the attorney-client privilege.' Thus, the Court recognized that intervention by a taxpayer in an enforcement proceeding might well be allowed when the circumstances are proper. But the Court did not there pronounce, even when confronted with a situation concerning an attorney's work product, that the taxpayer possesses an absolute right to intervene in any internal revenue summons proceeding. The usual process of balancing opposing equities is called for.

"We, thus, are not in agreement with the holdings or implications in United States v. Benford, 406 F.2d 1192, 1194 (C.A.7 1969); United States v. Bank of Commerce, 405 F.2d 931 (C.A.3 1969); and Justice v. United States, 365 F.2d 312, 314 (C.A.6 1966), to the effect that, under Reisman, a taxpayer may intervene as of right simply because it is his tax liability that is the subject of the summons. Instead, we agree with the opposing conclusion reached by the Fifth Circuit here, 418 F.2d at 1218, and in In re Cole, 342 F.2d 5, 7–8 (C.A.2), cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965), and O'Donnell v. Sullivan, 364 F.2d 43, 44 (C.A.1), cert. denied, 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433 (1966)."

*Donaldson* is clear to the effect that the records of the bank are not the taxpayer's; nor does he have a proprietary interest of any kind in them. The Court stated that (400 U.S. at page 523, 91 S.Ct. at page 538, 27 L.Ed.2d at page 585):

"We emphasize initially, as did Judge Tuttle in his opinion for the Court of Appeals, 418 F.2d, at 1214, that what is sought here by the Internal Revenue Service from Mercurio and from Acme is the production of

Acme's records and not the records of the *taxpayer*. Further, as Judge Tuttle also emphasized, this is not a case where a summons has been issued to the taxpayer himself seeking access to his books and information from his mouth. Neither is it a case where the summons is directed at the taxpayer's records in the hands of his attorney or his accountant, with the attendant questions of privilege, or even in the hands of anyone with whom the taxpayer has a confidential relationship of any kind. Each of the summonses here, we repeat, was directed to a third person with respect to whom no established legal privilege, such as that of attorney and client, exists, and had to do with records in which the taxpayer has no proprietary interest of any kind, which are owned by the third person, which are in his hands, and which relate to the third person's business transactions with the taxpayer."

At the hearing on the Petition for Leave to Intervene this Court was concerned with whether or not when the summons was issued the Internal Revenue Service was presently investigating Donn or Shirley Smith for the purpose of criminal prosecution and if any recommendation had been made with respect to any possible criminal charges. Mr. Thomas Valancius unequivocally stated that there was nothing of this nature pending or even under consideration at the time of his audit, or at the time of the issuance of the summons, or now. Taking the testimony at the hearing as a whole, this Court feels that the test set forward in *Donaldson* has been complied with and that (1) the summons was not issued to obtain material sought in a criminal prosecution, and (2) the material sought is not protected by any privilege that the taxpayer may raise.

■ As to the Constitutional objections raised by the Intervener, all of them have been considered by the Supreme Court. In Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the Supreme Court

said that "it is now undisputed that a special agent is authorized, pursuant to 26 U.S.C. section 7602 to issue an Internal Revenue summons in aid of a tax investigation with civil and possible criminal consequences". In Reisman v. Caplan, *supra*, the Court reviewed the structure that Congress provided for the issuance and enforcement of an internal revenue summons. Ten months after *Reisman* the Court decided United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) in which it was primarily concerned with the standards the Internal Revenue Service must meet in order to obtain judicial enforcement of its orders. The Court held that the statutes required only that the investigation be conducted pursuant to a legitimate purpose, that the inquiry be relevant to that purpose, that the information sought is not already within the possession of the Internal Revenue Service, and finally, that the administrative steps required by the Code have been followed.

■ As to the requirements set down by the *Powell* decision, at the hearing on August 9, 1973, this Court was careful to ascertain whether any or all of the information requested in the summons to the Union National Bank was in the possession of the Internal Revenue Service before the issuance of the summons. Both the government and the revenue agent assured the Court that they did not have any such information before the summons was issued, and that the only way a proper evaluation of the taxpayer's liability for the years in question could be determined would be to examine the records sought to be produced by the summons. This Court is satisfied that this was a valid representation.

■ An additional Constitutional infirmity of the statutes alleged by the Intervener was that neither the Internal Revenue Service nor the taxpayer's bank were required to give notice of the service of the summons to the taxpayer. This question does trouble the Court, but is completely moot in the present case because the respondent bank did, in fact, notify the taxpayer of the issuance of the summons and a full hearing was afforded to the taxpayer on his right to intervene.

Finally, in support of the position adopted by this Court in denying the taxpayer's right to intervene in the present case, this Court has carefully analyzed the recent case of United States v. Northwest Pennsylvania Bank & Tr. Co., 355 F.Supp. 607 (W.D.Pa. 1973), a case decided by Judge William Knox of this Court, and we find that the facts are sufficiently different to permit differing results. In the Northwest Bank & Trust case the Court had before it a letter from the Chief of Intelligence Division, Internal Revenue Service, indicating to the taxpayer that the service was considering recommending institution of criminal proceedings. Judge Knox, in a very scholarly opinion, said with respect to the impact of the letter, at page 613:

> "Considering this case in light of Reisman, Donaldson and Couch, we have concluded that while there has been as yet no formal recommendation of prosecution, nevertheless the investigation is sufficiently far along that it appears that under these circumstances in the light of what was said in Donaldson and Couch, we should allow the taxpayer to intervene and be heard."

Conversely, there is not even the slightest intimation of any recommendation of criminal prosecution with respect to the taxpayer before this Court and, therefore, the Petition for Leave to Intervene will be denied.

Finally, there remains to be considered the Answer of the Union National Bank of Pittsburgh to the Petition for the Enforcement of the Summons in which the bank avers that Item (f) of the summons is overly broad and indefinite.

At the hearing on the Petition for Enforcement, Agent Valancius was specifically asked what was desired by Item

(f) of the summons. His reply was to the effect that the IRS desired everything not specifically requested in Items (a) thru (e), and the Item (f) was intended as a catch-all request. Upon completion of the interrogation both Agent Valancius and the government agreed that Item (f) was unduly vague and that they would not oppose its deletion from the summons. The respondent bank, thereupon, expressed its willingness to comply with the summons and produce the documents requested.

An appropriate order in accord with this opinion will be entered.

## ORDER

And now, to-wit, this 15th day of August, 1973, after hearing and consideration of the issues before the Court,

It is hereby ordered, adjudged and decreed that the Petition to Intervene of Mr. Donn J. Smith as a Party in this case be and the same is hereby denied;

It is further ordered that the Summons served upon the respondent Union National Bank of Pittsburgh under date of June 8, 1973, directing that the said bank produce for examination certain records and papers be enforced, and that the said respondent be required to produce the records, documents, papers and information demanded therein as to the individuals named in the Summons, limited to the following:

A. Bank statements for the years 1969, 1970 and 1971.
B. Cancelled checks for the years 1969, 1970 and 1971.
C. Deposit slips for the years 1969, 1970 and 1971.
D. Savings account records for the years 1969, 1970 and 1971.
E. Savings certificates for the years 1969, 1970 and 1971.

It is further ordered that the same be produced for examination at the Union National Bank, 4th & Wood Street, Pittsburgh, Pennsylvania, on or before August 29, 1973.