611 F.2d 1226
 80-1 USTC P 9110
 Leonard GINTER, Appellant,
v.
Roy B. SOUTHERN and I. R. Ralston, Appellees.
Leonard G. GINTER, Cleo S. Denison, Obie Weaver, Gary
Sandusky, Danny N. Whitmire and Bernard J.
Hinderman, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE and Other Unknown, Unnamed
Internal Revenue Agents, Appellees.
 Nos. 79-1313, 79-1344.
 United States Court of Appeals,
 Eighth Circuit.
 Submitted Nov. 28, 1979.
Decided Dec. 10, 1979.
 
 Leonard Ginter, Smithville, Ark., pro se, on brief.
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Helen A. Buckley, Jay W. Miller, Attys., Tax Div., Dept. of Justice, Washington, D. C., and W. H. Dillahunty, U. S. Atty., Little Rock, Ark., and in case number 79-1313 Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., and in case number 79-1344 Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., on brief, for appellees.
 Before HEANEY, ROSS and McMILLIAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 These consolidated appeals center around a dispute between Leonard G. Ginter and the Internal Revenue Service. Ginter contended that the Federal Reserve System was unconstitutional, and that he owed no income taxes because he did not receive any income redeemable in gold or silver. Ginter, along with a group of five other tax protestors, Cleo Denison, Obie Weaver, Gary Sandusky, Danny Whitmore and Bernard Hinderman, filed a complaint in the district court against the Commissioner of the Internal Revenue Service and unknown agents alleging deprivation of constitutional rights. Ginter, et al v. Commissioner of Internal Revenue, et al, J-77-C-119 (E.D.Ark.1979) (our appeal No. 79-1344). The plaintiffs sought as relief that (1) the tax system be declared unconstitutional; (2) the government be enjoined from collecting taxes; (3) the Commissioner be required to accept amended returns from plaintiffs showing no taxable income for the years 1971-1975; and (4) a tax refund of all taxes paid between 1969-1976 be issued.
 
 
 2
 Several months after the suit was filed, the Internal Revenue Service issued a "Final Notice Before Seizure" informing Ginter that he owed taxes, interest and penalties in the amount of $2,934.02 for the taxable year ending December 31, 1974. The notice warned Ginter that ten days after the date of the notice, any salary or wages due him would be levied upon and bank accounts, receivables, commissions or other income, property or rights to property belonging to him might also be seized.
 
 
 3
 On March 21, 1978, Ginter filed a motion for injunctive relief in Case No. J-77-C-119, seeking an order from the district court enjoining the Internal Revenue Service from carrying out the terms of the "Final Notice Before Seizure." The district court did not issue an injunction. On March 22, 1978, a "Notice of Federal Tax Lien Under Internal Revenue Laws" was filed in the Lawrence County Circuit Court in Arkansas. Later that year, the Internal Revenue Service issued a summons ordering Ginter to appear before Roy B. Southern, an Internal Revenue officer, on August 24, 1978, to give testimony regarding his 1974 tax liability and to produce records relating to his income for 1974. Ginter appeared but refused to give any information. On January 25, 1979, the Internal Revenue Service seized Ginter's 1974 International pickup.
 
 
 4
 On September 11, 1978, Ginter filed a second complaint in the district court against Internal Revenue Service Agents Southern and I. R. Ralston, alleging violations of his constitutional rights and seeking money damages. Ginter v. Southern, et al, Case No. J-C-78-109 (E.D.Ark.1979) (our appeal No. 79-1313). In this complaint, Ginter renewed his allegations concerning the unconstitutionality of the tax laws.
 
 
 5
 The defendants in both lawsuits filed motions to dismiss, which were granted by the district court. Ginter appeals both dismissals.[1] We affirm.
 
 
 6
 The complaints and briefs on appeal are filled largely with vague, incomprehensible, or patently frivolous arguments. The only claim made with any specificity is with regard to appellant Ginter, and is that the issuance of the summons, and the subsequent seizure of Ginter's 1974 International pickup, violated Ginter's constitutional rights. Ginter argues that the Internal Revenue Service violated his right to due process when it seized his truck without a jury trial. He also argues that Agent Southern violated his Fourth Amendment rights in causing to be issued a summons ordering Ginter to give testimony and to produce his books and records.
 
 
 7
 Ginter's truck was seized under the authority of 26 U.S.C. § 6331, which provides in pertinent part:
 
 
 8
 (a) Authority of Secretary or delegate. If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * *
 
 
 9
 (b) Seizure and sale of property. The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (d)(3), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).
 
 
 10
 Ginter's argument that the truck was unconstitutionally seized is similar to the argument advanced by the taxpayer in United States v. Pilla, 550 F.2d 1085 (8th Cir.), Cert. denied, 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977), and
 
 
 11
 boils down to the proposition that 26 U.S.C. § 6331 is unconstitutional because it permits a seizure of property without prior judicial proceedings. That argument has been out of date since the Supreme Court decided Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), more than forty-five years ago. See Fuentes v. Shevin, 407 U.S. 67, 90-92, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Kalb v. United States, 505 F.2d 506, 510 (2d Cir. 1974); and Tavares v. United States, 491 F.2d 725 (9th Cir. 1974), Cert. denied, 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975).
 
 
 12
 Id. at 1092.
 
 
 13
 Ginter's argument that Agent Southern violated his Fourth Amendment rights by serving a summons on him is difficult to decipher. He complains that the summons was signed by Southern, rather than by a judge. He also appears to argue that, because he owed no tax in the first place (since he received as income no dollars redeemable in gold or silver), the action by the defendants in issuing the summons constituted an invasion of privacy and an unreasonable search and seizure.
 
 
 14
 Ginter's arguments are without merit. The summons was issued and served in accordance with 26 U.S.C. §§ 7602 and 7603. The information sought with the aid of the summons related to Ginter's tax liability for the year 1974, a year for which he claimed he received no income. As such, the summons sought information relevant to a legitimate investigatory purpose. There is no doubt that it was issued in good faith. The summons is valid in all respects and does not violate the Fourth Amendment. United States v. Sun First National Bank of Orlando, 510 F.2d 1107, 1109-1110 (5th Cir.), Cert. denied, 423 U.S. 927, 96 S.Ct. 273, 46 L.Ed.2d 254 (1975); United States v. Union National Bank, 363 F.Supp. 629, 633-634 (W.D.Pa.1973).
 
 
 15
 The appellants also attempt to state numerous constitutional claims, and on the basis of those claims seek refund of taxes paid for the years 1969-1976. The constitutional claims are based upon arguments so frivolous that we do not discuss them in any detail.[2]
 
 
 16
 We hold that the district court properly found that the appellants failed to state any constitutional claim. Since the appellants' claims for refunds are based entirely upon their constitutional claims, those refund claims are likewise without merit.[3]
 
 
 17
 Finally, the appellants complain that they were not furnished counsel. The appellants did not proceed in forma pauperis in the district court. Even had they done so, we would hold that the district court did not err in refusing to appoint counsel to represent them in this frivolous lawsuit.
 
 
 18
 Judgment affirmed.
 
 
 
 [1]
 Rule 11 of the Federal Rules of Civil Procedure requires that every pleading, including the notice of appeal, be signed by the party filing it, or by that party's attorney. We note that, while the notice of appeal in J-77-C-119 was signed by Ginter's co-plaintiffs, of the six individuals named as pro se plaintiffs-appellants in No. 79-1344, only Leonard G. Ginter, who is not an attorney, signed the complaint, the notice of appeal, and all other pleadings filed in that case. Under similar circumstances, courts have dismissed the appeals of those pro se appellants who failed to sign the notice of appeal. Scarrella v. Midwest Federal Savings and Loan, 536 F.2d 1207, 1209 (8th Cir.), Cert. denied, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976); McKinney v. DeBord, 507 F.2d 501, 503 (9th Cir. 1974). Because of the conclusion we reach in this case, we decline to consider whether such a dismissal is appropriate here. However, we urge the district courts to assure compliance by pro se litigants with the requirements of Rule 11. Only by such compliance may the courts be assured that the parties named as plaintiffs are actually in accord with the pleadings filed on their behalf
 
 
 [2]
 E. g., (1) the requirement that the appellants complete Form 1040 is a per se violation of the Fifth Amendment; (2) the Federal Reserve System is unconstitutional and, therefore, the Internal Revenue Code is unconstitutional; (3) the Internal Revenue Code constitutes a Bill of Attainder; (4) the graduated income tax results in a denial of equal protection and due process of law; (5) the Tax Court was unconstitutionally established; and (6) the Internal Revenue Code results in involuntary servitude in violation of the Thirteenth Amendment
 
 
 [3]
 We are assuming for the purpose of this discussion that the district court had jurisdiction over the appellants' claims for refund. Although it is not entirely clear from the record, it appears that the appellants have not paid the taxes assessed against them. Full payment of an assessment or proposed deficiency is a threshold requirement for the district court to entertain jurisdiction of a claim for refund under 28 U.S.C. § 1346(a)(1). Flora v. United States, 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Furthermore, it is not clear whether the appellants filed a timely claim for refund with the Internal Revenue Service, pursuant to 26 U.S.C. § 7422(a), or whether 26 U.S.C. § 6532(a) (which provides, Inter alia, that no refund suit may be begun within six months from the date of the filing of the claim for refund unless the Internal Revenue Service has rendered a decision prior to that time) has been complied with