T.C. Memo. 2006-177


UNITED STATES TAX COURT


LARRY J. LUNDGREN AND ANITA L. LUNDGREN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10174-03, 6083-04.   Filed August 23, 2006.

     Ps failed to report certain farming income for the
1999, 2000, 2001, and 2002 taxable years and a capital
gain for the taxable year 2001.  R determined
deficiencies and asserted penalties under sec. 6662,
I.R.C., which Ps contested primarily on the basis of
tax protester arguments.

     <u>Held</u>:  Ps are liable for the deficiencies
determined by R for 1999, 2000, 2001, and 2002
including self-employment taxes pursuant to sec. 1401,
I.R.C., and a capital gain for 2001.

     <u>Held</u>, <u>further</u>, Ps are liable for penalties under
sec. 6662, I.R.C., for 1999, 2000, 2001, and 2002.


Larry J. Lundgren and Anita L. Lundgren, pro sese.

<u>Joan E. Steele</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined the following Federal income tax deficiencies and penalties with respect to petitioners' Federal income taxes:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662 |
|------|-----------|-----------------------------------|
| 1999 | $4,750 | $950.00 |
| 2000 | 6,710 | 1,342.00 |
| 2001 | 10,090 | 2,018.00 |
| 2002 | 2,577 | 515.40 |

The issues for decision are:

(1) Whether the income from the Lucky Kirt Irrevocable Trust (Lucky Kirt Trust) should be attributed to petitioners;

(2) whether petitioners are liable for self-employment taxes under section 1401[1] for the taxable years 1999 through 2002;

(3) whether petitioners are liable for tax on a capital gain in taxable year 2001;

(4) whether petitioners are liable for accuracy-related penalties under section 6662 for the taxable years 1999 through 2002; and

(5) whether the Court should impose a penalty, sua sponte, under section 6673.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Background

The exhibits[2] of the parties are incorporated herein. These cases were consolidated for purposes of trial, briefing, and opinion. At the time these petitions were filed, petitioners resided in Gove, Kansas.

Respondent issued petitioners notices of deficiency for the 1999 taxable year on March 24, 2003, and for the 2000, 2001, and 2002 taxable years on January 6, 2004. Petitioners timely filed a petition on September 8, 2003, for the 1999 taxable year and a petition on April 8, 2004, for the 2000, 2001, and 2002 taxable years.

Larry J. Lundgren (Mr. Lundgren) was a farmer, and Anita L. Lundgren (Mrs. Lundgren) was a registered nurse and the secretary of the Lucky Kirt Trust from 1999 through at least a portion of 2001.

The Lucky Kirk trust was formed at the request of Raymond Roemer, father of Mrs. Lundgren, and was allegedly created on October 11, 1990. Neither of petitioners was present during the formation of the trust or the signing of the trust document. Dennis Roemer, brother of Mrs. Lundgren, was present during trust formation discussions between his father and Jimmy Clayton

---

[2] Although requested by the Court, the parties did not file a stipulation of facts. On the basis of religious beliefs, Mr. Lundgren refused to stipulate anything except petitioners' names.

Chisum,[3] a.k.a. J.C. Chisum (Mr. Chisum), the Lucky Kirt Trust's trustee; however, Dennis Roemer was not present during the signing of the trust documents, nor did he read the trust documents. To fund the trust, Raymond Roemer transferred land located in Gove County, Kansas, to Lucky Kirt Trust by warranty deed dated December 14, 1992, and recorded July 28, 1993.[4]

Upon the purported creation of the Lucky Kirt Trust, Mrs. Lundgren signed the "Minutes of Lucky Kirt" in the capacity of secretary, and her handwritten name appears on the signature line for the general manager. In the same document, Mr. Lundgren signed in the capacity of the assistant general manager, and Mr. Chisum signed in the capacity of the managing agent on behalf of the trust's trustee, The Prudent Man Trustee Co. (Prudent Man Trustee). Mr. Chisum did not have any documentation relating to his authority via the Prudent Man Trustee or Lucky Kirt Trust to sign documents as managing agent and did not provide a copy of the Lucky Kirt Trust document. Petitioners did not at any time

---

[3] Jimmy Clayton Chisum is a known promoter of tax-avoidance schemes. Aspects of his tax-avoidance schemes are described in Lipari v. Commissioner, T.C. Memo. 2000-280 (sec. 6673 penalty imposed on taxpayers who claimed they were unable to obtain records from Mr. Chisum, "trustee" of their "trust") and George v. Commissioner, T.C. Memo. 1999-381 ("trust" of which Mr. Chisum was "trustee" was a sham, and payments received by that "trust" were income of osteopathic physician who performed services that generated the income).

[4] The record contains references to Lucky Kirt II trust and Lucky Kirt Trust II. There was never a trust named Lucky Kirt II, rather Lucky Kirt II was the name given to the Legg Mason Wood Walker (Legg Mason) option trading account.

during either the audit or at trial provide a copy of the trust agreement.

Raymond Roemer, who was the initial beneficiary of Lucky Kirt Trust, died on April 27, 1994. After the death of Raymond Roemer, Mrs. Lundgren's name was listed as the 100-percent beneficiary of Lucky Kirt Trust, the 100-percent member of Lucky Kirt Trust, or the sole entity receiving payment on several documents submitted to the U.S. Department of Agriculture (USDA). In addition, she signed other documents submitted to the USDA as participant, owner, operator, manager, or agent on behalf of Lucky Kirt Trust. These documents were signed for multiple years, among these, the 1999, 2000, and 2001 years in issue.

Hall and Strong, LC (Hall and Strong) at a date undisclosed by the record became the successor trustee to the Prudent Man Trustee. Mr. Chisum did not have any documentation at trial supporting Hall and Strong's appointment as trustee of Lucky Kirt Trust. The signature card of The Farmers State Bank of Oakley, Kansas, for the Lucky Kirt Trust listed the signatures of Mr. Chisum, Raymond Roemer, and the signature stamp of "JC Chisum" as authorized signers on the account. Mrs. Lundgren was authorized during at least some of the years at issue to sign checks for the Lucky Kirt Trust using the signature stamp of Mr. Chisum. Mr. Chisum gave Mrs. Lundgren the authority to perform certain duties in her capacity as the secretary of Lucky Kirt Trust.

An option trading account at Legg Mason was created on or about May 9, 1994, and Mrs. Lundgren signed the account's documentation on May 10, 1994. The account statements during the years at issue list Raymond F. Roemer as Trustee, although by then he was deceased. On April 18, 2001, the Legg Mason account reflected a sale of a U.S. Treasury note with a face value of $20,000 for $20,430.

In 2001, Lucky Kirt Trust disbursed $195,000 to Mr. Lundgren allegedly as a "gentleman's loan" for farming purposes. The "loan" was not memorialized in a written agreement, and there was no repayment schedule, no final payoff date, and no interest rate.

Lucky Kirt Trust also disbursed money to petitioners' daughter to buy a car. The "loan" to petitioners' daughter was not reduced to a written agreement. Although Mr. Chisum confirmed that regular payments were made on this loan, he did not provide any proof of the payments, and there was no interest rate applied to the loan. Mr. Chisum did not charge interest on these loans.

Petitioners farmed the land held by Lucky Kirt Trust as tenant farmers under a crop shares agreement, which provided for petitioners to live on the land and bring in crops in lieu of rent payments. The crop share was adjusted to reflect the profitability of the crops and approximate rental value of the land. The crop shares agreement was not in writing.

Mr. Chisum was a part-time consultant, who consulted in business planning, business management, estate planning, and estate management, including the creation of trust documents such as the Lucky Kirt Trust. Mr. Chisum held a high school degree and was specially trained in nuclear engineering while in the Navy. He did not learn to read until the age of 40 and learned about tax planning through his accountant, Richard Gilmore and seminar-type courses, rather than any formalized tax education. Mr. Chisum did not hold any professional licenses, nor did he seek legal advice in creating these trusts to determine the trusts' treatment by the Internal Revenue Service.

OPINION

I.   Contentions of the Parties

On the premises of tax protester arguments, petitioners contend that they were not required and should not be required to pay income taxes.[5] Specifically, petitioners argue that they did not earn any income from, receive any distributions from, and were not involved with Lucky Kirt Trust a.k.a. Lucky Kirt II Trust. Petitioners maintain that they are merely tenant farmers

---

[5] Petitioners at various junctures have alluded to the Sixteenth Amendment. As the Court noted at trial, our tax system, the Internal Revenue Code, and the Tax Court have been firmly established as constitutional. See Crain v. Commissioner, 737 F.2d 1417, 1417-1418 (5th Cir. 1984); Ginter v. Southern, 611 F.2d 1226, 1229 (8th Cir. 1979). Specifically, the Court notes that the "Federal income tax laws are constitutional. * * * The whole purpose of the 16th Amendment was to relieve all income taxes when imposed from apportionment and from a consideration of the source whence the income was derived." Abrams v. Commissioner, 82 T.C. 403, 406-407 (1984).

and caretakers of land owned by Lucky Kirt Trust, not owners of or in control of any Lucky Kirt Trust assets or income. Petitioners assert that the period of limitations for attacking the validity of the Lucky Kirt Trust expired in 1994, that the income tax is one of voluntary self-assessment and they have correctly self-assessed and paid, that the revenue agent exceeded her authority, and that this Court has no jurisdiction to decide these cases.[6] Therefore, petitioners conclude there are no penalties due from petitioners for the taxable years in issue.

Respondent asserts that petitioners earned income through the sham Lucky Kirt Trust and that the Lucky Kirt Trust should be disregarded for tax purposes due to its lack of economic substance. Thus, the income from Lucky Kirt Trust should be attributed to petitioners, and as a result, petitioners also have a capital gain in 2001 and are liable for self-employment taxes for all the years in issue. Morever, respondent contends that petitioners' defenses to the deficiencies and penalties comprise only self-serving testimony and tax protester arguments.

---

[6] Petitioners' arguments are frivolous. Respondent timely issued the notices of deficiency in these cases in accordance with the statute of limitations. Petitioners' arguments regarding the legitimacy of the Federal income tax system have been universally rejected as frivolous and warrant no further comment. See Crain v. Commissioner, supra at 1417-1418 ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that they have some colorable merit."). In the instant cases, the Tax Court has exclusive jurisdiction over petitioners' disputed income taxes. See sec. 6214(a); Marino v. Brown, 357 F.3d 143, 145 n.5 (1st Cir. 2004).

II.  Burden of Proof

In general, the Commissioner's determination of a taxpayer's tax liability is presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determination is improper.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The "presumption of correctness" is appropriate where the Commissioner has furnished evidence linking the taxpayer to the "tax generating activity".  Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559.

Where the Commissioner introduces evidence that the taxpayer received unreported income, as respondent did here, the burden generally is on the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary and erroneous.  Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97; see also Palmer v. IRS, 116 F.3d. 1309, 1312 (9th Cir. 1997) ("The Commissioner's deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation.")(emphasis added)); Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982).

However, section 7491 may shift the burden to the Commissioner in specified circumstances, for example, where the taxpayer produces "credible evidence" and meets other requirements.  Sec. 7491(a)(1); see also H. Conf. Rept. 105-599,

at 240-241 (1998), 1998-3 C.B. 747, 994-995 (reciting the definition of credible evidence). In addition, to shift the burden of proof, taxpayers must maintain all records required by the Code and regulations and cooperate with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2).

Petitioners did not satisfy the prerequisites under section 7491(a)(1) and (2) to shift the burden of proof to respondent. They did not produce any evidence or documentation disputing respondent's determinations or supporting their claims as to the economic substance of the Lucky Kirt Trust. Specifically, they failed to provide either a copy of the trust document for Lucky Kirt Trust or any documentation authorizing Mrs. Lundgren or Mr. Chisum to act on behalf of the trust or present any credible evidence other than their own self-serving testimony that the trust had economic substance or even existed. Similarly, petitioners did not provide any evidence regarding the capital gain determination for 2001 and self-employment tax liabilities for 1999 through 2002. Consequently, except for any penalties subject to section 7491(c), as to which respondent bears the initial burden of production, the general premise of Rule 142(a) remains applicable.

III. Lucky Kirt Trust as a Disregarded Entity

Taxpayers are generally allowed to arrange and conduct their affairs and structure their transactions to minimize any adverse

tax implications. See Gregory v. Helvering, 293 U.S. 465, 469 (1935); Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980). However, where the creation of a trust lacks economic effect and has no other cognizable economic relationship, we may ignore the trust as a sham. See, e.g., Zmuda v. Commissioner, 79 T.C. 714 (1982), affd. 731 F.2d 1417, 1421 (9th Cir. 1984); Markosian v. Commissioner, supra; Muhich v. Commissioner, T.C. Memo. 1999-192, affd. 238 F.2d 860 (7th Cir. 2001).

A fundamental principle of tax law is that income is taxed to the person who earns it. See Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111, 114-115 (1930). A taxpayer cannot avoid income taxation by assigning income which a taxpayer controlled to a trust, thereby effectively shifting the burden of tax. Vnuk v. Commissioner, 621 F.2d 1318, 1320 (8th Cir. 1980), affg. T.C. Memo. 1979-164. Petitioners, by assigning income from their farming operations, have attempted to shift their income to Lucky Kirt Trust.

The Court looks behind the trust and will disregard the trust if it lacks economic substance and was created for tax avoidance purposes. To determine whether a trust has economic substance, we consider these factors: (1) Whether the taxpayer-grantor's relationship to the transferred property differed materially before and after the trust's creation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other trust beneficiaries; and (4) whether the

taxpayer respected the restrictions placed on the trust's operation as set forth in the trust documents; i.e., whether the taxpayer felt bound by any trust restrictions or the law of trusts. See, e.g., Markosian v. Commissioner, supra at 1243-1244; Muhich v. Commissioner, supra. As discussed below, each of these factors supports a conclusion that Lucky Kirt Trust did not have any economic substance.

A.   Raymond Roemer's Relationship to Lucky Kirt Trust

There is no indication that Raymond Roemer's relationship to the land he transferred to Lucky Kirt Trust before or after the formation of the trust differed in any material way. Petitioners did not provide any evidence of any material change in Raymond Roemer's relationship to the land after the trust's formation. The transfer of land to the trust failed to alter "any cognizable economic relationship" between Mr. Roemer and the property transferred. See Markosian v. Commissioner, supra at 1241. Petitioners did not provide the trust agreement or any evidence to the contrary. Consequently, it is apparent that Raymond Roemer retained his same relationship to the property after the transfer that he had before the transfer.

B.   Independence of Lucky Kirt Trust Trustee

Petitioners have failed to establish that the trustee was actually independent of Lucky Kirt Trust. Mr. Chisum, as the Prudent Man Trustee, claimed to be the original trustee for the trust. Then, he claimed that Hall and Strong was the trustee

following the Prudent Man Trustee; however, neither Mr. Chisum nor petitioners provided any documentation evidencing such a change in the trust's trustee. Although Mr. Chisum was purportedly the named trustee, it was Mrs. Lundgren, the 100-percent beneficiary after Raymond Roemer's death, who appeared to make all the decisions regarding the trust and signed documents on behalf of the trust. This included Mrs. Lundgren's authorization to sign checks for Lucky Kirt Trust as she was one of the names listed on the preprinted checks for the Lucky Kirt Trust account.

Although Mrs. Lundgren claimed that she signed checks and other documents pertaining to the trust using the signature stamp of Mr. Chisum in her role as secretary for Lucky Kirt Trust, there is no evidence, other than petitioners' self-serving testimony, that Mr. Chisum actually controlled the manner in which she used the signature stamp. Thus, there was no convincing evidence that Mrs. Lundgren's authority to use the signature stamp of Mr. Chisum was restricted in any meaningful way.

Raymond Roemer was listed as the trustee on the Legg Mason documents for the Lucky Kirt Trust II account for the years in issue. Mrs. Lundgren signed a client option agreement for the Legg Mason account on May 10, 1994, and for the years in issue, all Legg Mason account statements for the Lucky Kirt Trust II account were sent to Mrs. Lundgren's address. Morever, there is

nothing in the record to suggest that Mr. Chisum exercised any power or authority over the Legg Mason account. These facts demonstrate the lack of an independent trustee for the purported Lucky Kirt Trust.

C.   Economic Interests of Beneficiaries

The Lucky Kirt Trust arrangement does not reflect an economic interest's being transferred to any other beneficiaries. Raymond Roemer had the power to revoke or amend the trust, and petitioners did not provide any evidence to the contrary. Thus, Raymond Roemer essentially had unlimited power to control the trust property in any manner, and upon his death, Mrs. Lundgren in practice replaced her father as the trustee.

Mrs. Lundgren signed several documents for the USDA, identifying herself in capacities such as the heir or beneficiary of Lucky Kirt Trust and on behalf of Lucky Kirt Trust as participant, owner, operator, manager, or agent. After Raymond Roemer's death in 1994, Mrs. Lundgren was the only one with access and control over the Lucky Kirt Trust II bank account because, as secretary, she was the only other person listed on the account. Because the Lucky Kirt Trust had no other beneficiaries than Mrs. Lundgren and because the Lucky Kirt Trust II bank account was completely controlled by Mrs. Lundgren after her father's death, petitioners had the power to allocate all the income and property of the trust to themselves to the detriment of other potential trust beneficiaries.

D.    Respect for Trust Restrictions

Petitioners did not demonstrate that they respected the restrictions of the trust or the law of trusts as they did not show they felt bound by restrictions or trust law.  Further, they did not show that the trust imposed any substantial restrictions on petitioners' use of the trusts' property or the Legg Mason bank account.

As an example of petitioners' disregard for trust restrictions, Lucky Kirt Trust's $195,000 loan to Mr. Lundgren in 2001, which was purportedly made for "good will", lacked any documentation.  The loan agreement, if one existed, was not in writing, and the loan did not provide for a repayment schedule, a payoff date, or an interest rate.  Although Mr. Chisum testified that the payments on the loan were being made, petitioners did not provide any evidence to corroborate Mr. Chisum's statement.

Similarly, the Lucky Kirt Trust loan to petitioners' daughter shows that petitioners were not bound by any trust restrictions.  The loan was for the personal purchase of a car merely because petitioners' daughter desired a car.  As before, there was no written loan agreement, no interest rate, and no proof of any loan payments.  Mr. Chisum's statement that he preferred never to charge interest is inconsistent with his fiduciary responsibilities and is not a valid reason for a trust to provide an interest-free loan.

The Lucky Kirt Trust loans to Mr. Lundgren and petitioners' daughter will not be respected as bona fide loans. A bona fide loan requires a debt-creditor relationship and the expectation of repayment. Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970). The Court considers the following factors as relevant here in determining whether a valid debtor-creditor relationship existed: (1) Whether the purported loan was evidenced by a written promissory note; (2) whether a reasonable market rate of interest was charged; (3) whether a schedule for repayment or a stated maturity date was established; (4) whether security or collateral for the loan existed; and (5) whether the loan was actually repaid by the stated maturity date. Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953); Meier v. Commissioner, T.C. Memo. 2003-94.

The loans from Lucky Kirt Trust to Mr. Lundgren and petitioners' daughter did not contain any of the elements that would support the creation of a bona fide loan. Because of the relationship between petitioners and the trust, these transfers will be highly scrutinized. See Clark v. Commissioner, supra at 783 (holding that "intrafamily transactions are subject to rigid scrutiny"). The loans are conclusive evidence that in practice the trust was petitioners' alter ego, and petitioners were not bound by the restrictions of the trust, if there really was one, or the law of trusts.

The combination of these factors and the apparent lack of any substantive trust purpose other than tax avoidance compels a finding that Lucky Kirt Trust shall be disregarded for Federal income tax purposes.  See Markosian v. Commissioner, 73 T.C. at 1244-1245.  Therefore, petitioners will be taxed on the income attributed to Lucky Kirt Trust.  See sec. 61(a).

IV.  Self-Employment Tax

Section 1401 imposes, in addition to other taxes, a tax on the self-employment income of every individual.  Subject to exclusions not applicable in the instant case, "self-employment income" refers to the "net earnings from self-employment derived by an individual".  Sec. 1402(b).  Section 1402(a) defines "net earnings from self-employment" as "the gross income derived by an individual from any trade or business carried on by such individual, less the [claimed] deductions [in the year in issue] allowed by this subtitle which are attributable to such trade or business".

The burden of proof to show that respondent's determination was in error remains with petitioners.  They offered no evidence and advanced no arguments with respect to liability for self-employment taxes.  The burden does not shift to respondent under section 7491.

Petitioners farmed the land held in the Lucky Kirt Trust and assigned their income from farming activities to the trust. Because we have determined that Lucky Kirt Trust is a sham trust,

petitioners earned farming income as sole proprietors or partners.  Thus, their income is subject to self-employment tax. See, e.g, Pelham v. Commissioner, T.C. Memo. 2001-173; Whitehead v. Commissioner, T.C. Memo. 1991-455, affd. without published opinion 17 F.3d 398 (9th Cir. 1994).  Petitioners did not provide any evidence that they were entitled to nor did they attempt to claim any further deductions arising from their farming activities.

V.   Unreported Capital Gain

Respondent determined that petitioners are liable for tax on an unreported capital gain for 2001 from the April 18, 2001, sale of a U.S. Treasury note.  Gross income includes any gain on property.  Sec. 61(a)(3).  The amount of any gain on property is the excess of the amount realized over the adjusted basis of the property.  See sec. 1001(a).  Generally, the adjusted basis for determining gain or loss from the sale or disposition of property is the cost of such property.  Secs. 1011(a), 1012.  Where property is acquired from a decedent, the basis is the fair market value of the property at the date of death, unless the alternate valuation date is elected.  Sec. 1014.  A taxpayer must establish the basis of the property for purposes of determining the amount of gain or loss the taxpayer must recognize.  "Proof of basis is a specific fact which the taxpayer has the burden of proving."  O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), affg. T.C. Memo. 1957-193.

Although it is highly probable that the Treasury note had a material tax basis, petitioners did not provide any evidence or documentation regarding the basis of the Treasury note.[7] Petitioners' contention that the income is that of Lucky Kirt Trust is unavailing because the Lucky Kirt Trust is disregarded for Federal income tax purposes.  The Court, therefore, sustains respondent on this issue.

VI.  Section 6662 Penalty

With respect to examinations beginning after July 22, 1998, the Commissioner bears the burden of production in any court proceeding involving an individual's liability for penalties or additions to tax.  Sec. 7491(c).  To meet this burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty or addition to tax.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  In instances where an exception to the penalty or addition to tax is afforded upon a showing of reasonable cause, the taxpayer bears the burden of showing such cause.  Id. at 447.

Section 6662(a) provides for an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment attributable to (among other things):  (1) Any negligence or

---

[7] The Court highlighted this issue at the start of the trial by suggesting to petitioners that the Court should hear any evidence pertaining to the amount they paid for the note or any other evidence that could be relevant to their tax liability.

disregard of the rules or regulations or (2) any substantial understatement of income tax.  Sec. 6662(b).

Section 6662(c) and section 1.6662-3(b)(1) and (2), Income Tax Regs., define "negligence" as including any failure to make a reasonable attempt to comply with the Code and define the term "disregard" as including any "careless, reckless, or intentional disregard".  Negligence is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances."  Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299; ASAT, Inc. v. Commissioner, 108 T.C. 147, 175 (1997); Neely v. Commissioner, 85 T.C. 934, 947 (1985). A substantial understatement of income tax exists for an individual where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000.  Sec. 6662(d)(1)(A).

An "understatement" is defined as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return, reduced by any rebate.  Sec. 6662(d)(2)(A).  The amount of the understatement shall be reduced by that portion of the understatement attributable to the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment or as to any item if (1) "the relevant facts affecting the item's tax treatment are adequately disclosed in the return

or in a statement attached to the return", and (2) "there is a reasonable basis for the tax treatment of such item by the taxpayer." Sec. 6662(d)(2)(B). Where a taxpayer can show there is reasonable cause for any portion of the underpayment and that the taxpayer acted in good faith with respect to that portion of the underpayment, then no penalty shall be imposed under section 6662(a) with respect to that portion of the underpayment. Sec. 6664(c).

Petitioners did not report any income for any of the years in issue. They chose to hide their income by attributing their earnings to a sham trust and failed to provide any books or records of Lucky Kirt Trust, or even the trust document itself. Moreover, petitioners did not offer any substantial authority or reasonable cause for failing to report their income. Accordingly, they are liable for a penalty under section 6662 for each of the years in issue. Respondent is sustained on this issue.

VII. <u>Section 6673 Penalty</u>

Section 6673 allows this Court to award a penalty to the United States in an amount not in excess of $25,000 for proceedings instituted by the taxpayer primarily for delay or for proceedings in which the taxpayer's position is frivolous or groundless. "A petition to the Tax Court, or a tax return, is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." <u>Coleman</u>

v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986) (imposing penalties on taxpayers who made frivolous constitutional arguments in opposition to the income tax). Courts have ruled that constitutional defenses to the filing requirement, such as petitioners present, are groundless and wholly without merit. Ginter v. Southern, 611 F.2d 1226, 1229 (8th Cir. 1979); see also Brunner v. Commissioner, T.C. Memo. 2004-187, affd. per curiam 142 Fed. Appx. 53 (3d Cir. 2005); Williams v. Commissioner, T.C. Memo. 1999-277; Morin v. Commissioner, T.C. Memo. 1999-240; Sochia v. Commissioner, T.C. Memo. 1998-294 (all of which imposed a section 6673 penalty for tax protester arguments).

> Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants. Once the legal system has resolved a claim, judges and lawyers must move on to other things. They cannot endlessly rehear stale arguments. Both appellants say that the penalties stifle their right to petition for redress of grievances. But there is no constitutional right to bring frivolous suits, see Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983). People who wish to express displeasure with taxes must choose other forums, and there are many available. * * * [Coleman v. Commissioner, supra at 72.].

Respondent did not request a section 6673 penalty; however, the Court chooses to impose a penalty today. This Court warned petitioners at trial that they might be liable for a penalty under section 6673 for raising frivolous arguments. However, at trial and on brief, Mr. Lundgren continued to present petitioners' case using meritless and groundless arguments such

as employing religious doctrine instead of presenting legal arguments. The Court is satisfied that a penalty in this case is appropriate, and, therefore, chooses to exercise its discretion sua sponte under section 6673(a)(1) in requiring petitioners to pay a penalty in the amount of $1,500 to the United States for each of these dockets for a total penalty of $3,000.

The Court has considered all of petitioners' contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, irrelevant, or moot.

To reflect the foregoing,

<u>Appropriate decisions</u>

<u>will be entered</u>.